**In Re Anonymous No. 18 D.B. 82**

Disciplinary Board Docket no. 18 D.B. 82.

SCHIAVO, *Board Member*, February 22,

1983—Pursuant to Rule 208(d) of the Pennsylvania Rules of Disciplinary Enforcement (enforcement rules), the Disciplinary Board of the Supreme Court of Pennsylvania (board) herewith submits its findings and recommendations to your honorable court with respect to the above proceeding.

## I. STATEMENT OF THE CHARGES

Respondent hereunder is an attorney admitted to the practice of law in the Commonwealth of Pennsylvania, having his office in [    ] County, Pa. He has been charged by petitioner, Office of Disciplinary Counsel, with violation of various Disciplinary Rules of the Code of Professional Responsibility in six matters or charges and as follows:

### CHARGE I ([A])

A. D.R. 1-102(A)(4), dealing with conduct involving dishonesty, fraud, deceit or misrepresentation;

B. D.R. 1-102(A)(6), dealing with conduct that adversely reflects on an attorney's fitness to practice law;

C. D.R. 2-110(A)(3), dealing with failure to refund, upon discharge or withdrawal, any unearned portion of a fee paid in advance;

D. D.R. 6-101(A)(3), dealing with neglect by an attorney of a legal matter entrusted to the attorney's care;

E. D.R. 7-101(A)(1), dealing with an attorney's intentional failure to deal with the lawful objectives of his client through reasonably available means;

F. D.R. 7-101(A)(2), dealing with an attorney's intentional failure to carry out a contract of

employment entered into with a client for professional services;

G. D.R. 7-101(A)(3), dealing with an attorney's intentional prejudicing or damaging of his client during the course of the professional relationship;

H. D.R. 7-102(A)(5), dealing with knowingly making a false statement of law or facts;

I. D.R. 7-102(A)(7), dealing with counseling or assisting the client in conduct the attorney knows is illegal or fraudulent.

## CHARGE II ([B])

A. D.R. 1-102(A)(6), dealing with conduct that adversely reflects on an attorney's fitness to practice law;

B. D.R. 2-110(A)(3), dealing with failure to refund, upon discharge or withdrawal, any unearned portion of a fee paid in advance;

C. D.R. 6-101(A)(3), dealing with neglect by an attorney of a legal matter entrusted to the attorney's care.

## CHARGE III ([C])

A. D.R. 1-102(A)(6), dealing with conduct that adversely reflects on an attorney's fitness to practice law;

B. D.R. 6-101(A)(3), dealing with neglect by an attorney of a legal matter entrusted to the attorney's care;

C. D.R. 7-101(A)(1), dealing with an attorney's intentional failure to seek the lawful objectives of his client through reasonably available means;

D. D.R. 7-101(A)(2), dealing with an attorney's intentional failure to carry out a contract of employment entered into with a client for professional services.

## CHARGE IV ([D])

A. D.R. 1-102(A)(6), dealing with conduct that adversely reflects on an attorney's fitness to practice law;

B. D.R. 2-110(A)(2), dealing with taking reasonable steps to avoid foreseeable prejudice to the client upon an attorney's withdrawal from representation;

C. D.R. 6-101(A)(3), dealing with neglect by an attorney of a legal matter entrusted to the attorney's care;

D. D.R. 7-101(A)(1), dealing with an attorney's intentional failure to seek the lawful objectives of his client through reasonably available means;

E. D.R. 7-101(A)(3), dealing with an attorney's intentional prejudicing or damaging of his client during the course of the professional relationship.

## CHARGE V ([E])

A. D.R. 1-102(A)(6), dealing with conduct that adversely reflects on an attorney's fitness to practice law;

B. D.R. 2-110(A)(3), dealing with failure to promptly return the unearned portion of a fee paid in advance;

C. D.R. 6-101(A)(3), dealing with neglect by an attorney of a legal matter entrusted to the attorney's care.

## CHARGE VI ([F])

A. D.R. 6-101(A)(3), dealing with neglect by an attorney of a legal matter entrusted to the attorney's care.

## II. HISTORY OF THE PROCEEDINGS

On March 30, 1982, a petition for discipline was

filed by the Office of Disciplinary Counsel as petitioner against within respondent alleging all of the abovementioned charges. An answer to the petition was filed by respondent on May 24, 1982, and the matter was referred to hearing committee [ ] for a hearing whereupon and shortly thereafter one of the members of the hearing committee recused herself, causing the matter to be referred to hearing committee [ ] which heard this matter and filed its report on December 14, 1982.

### III. HEARING COMMITTEE RECOMMENDATION AND REASONS THEREFOR

The hearing committee in a thorough and well written report made findings of fact and conclusions of law with regard to Charge I ([A]) that respondent had only violated D.R. 6-101(A)(3), dealing with neglect by an attorney of a legal matter entrusted to the attorney's care; with regard to Charge II ([B]) that respondent had not violated any of the Disciplinary Rules as charged; with regard to Charge III ([C]) that respondent had violated no Disciplinary Rules as charged; with regard to Charge IV ([D]) that respondent violated Disciplinary Rule D.R. 2-110(A)(2), dealing with taking reasonable steps to avoid foreseeable prejudice to the client upon an attorney's withdrawal from representation; with regard to Charge V ([E]) that respondent had not violated any Disciplinary Rules as charged; and with regard to Charge VI ([F]) that respondent had violated no Disciplinary Rules as charged. The hearing committee recommended that respondent receive public censure as the appropriate discipline to be imposed hereunder.

## IV. FINDINGS OF FACT

### A. CHARGE I ([A])

1. Respondent represented [A] from August 16, 1977 in an uncontested divorce case against her estranged husband.

2. Essentially no legal work was performed in this matter by respondent even though his client made numerous and persistent telephone calls to and contacts with respondent who simply left the case without advising his client by letter or otherwise that she should seek other legal counsel.

### B. CHARGE II ([B])

1. Respondent represented [B] relative to extended visitation or custody of [B's] children and following [B's] conviction of receiving stolen property in March or April of 1980 resulting in his receiving twenty-three (23) months' probation.

2. [B] did not listen to or heed respondent's advice in how to proceed in this case, a case wherein respondent had expended a substantial amount of time performing work for [B].

3. Respondent advised [B] that his said conviction would have to be treated with before any visitation or custody arrangements could be brought to issue.

4. [B] paid respondent, his attorney, a $250 retainer fee which was not returned to him by respondent.

### CHARGE III ([C])

1. Respondent represented a [C] on a property dispute and obtained a $300 retainer fee from [C] for this suit.

2. An equity complaint was prepared and filed by respondent in pursuance of his representation of [C] hereunder.

3. Oral argument was held before the court involved, and the case was transferred to the law side of the court. Preliminary objections were subsequently filed to the complaint, and respondent on or about April 11, 1979 praeciped the case on the argument list for argument on the preliminary objections.

4. In late fall of 1979 respondent's client, [C], accused him of delaying the case, criticized him and demonstrated her feeling to respondent outside of his office and in the presence of another client.

5. In addition and shortly thereafter respondent received a telephone call from his local state representative accusing him of not treating [C] fairly and requesting a return of her retainer monies.

6. In late 1979 or early 1980, respondent concluded that [C] had terminated her professional relationship with him.

7. Respondent did not return any portion of [C's] $300 retainer fee.

## CHARGE IV ([D])

1. Respondent represented concerned Citizens' Taxpayers Association of [   ] Township ([G]) and was paid a retainer of $1,000 to represent that group in pending litigation against the local sewer authority.

2. Respondent represented that group in an injunction action and other related legal action for a period of 15 months and until he was dismissed from said representation of February 4, 1980 by letter of that date from [D], Chairman of Citizens' Taxpayers Association of [   ] Township ([G]).

3. On February 22, 1980, respondent filed

praecipe to withdraw as legal counsel from the [G] but inadvertently and mistakenly filed it to a wrong action but corrected his mistake by filing a praecipe for withdrawal to to the right action on May 5, 1980.

4. Respondent had received notice that the [G] action was on the trial list and would be called for trial on April 8, 1980 and also received notice that a motion and rule for non pros or dismissal of said action had been filed on or about May 13, 1980 while [D] never received any notice of the abovementioned events.

5. Respondent never made any inquiry as to whether other counsel had entered their appearance for [G] and did not notify anyone of these said events on the [G] action.

6. While respondent filed a praecipe to withdraw as counsel on May 5, 1980 from the [G] action, the rule to show cause which had been issued was not returnable until May 30, 1980 and the motion for non pros was not granted by the court until May 28, 1980.

## CHARGE V ([E])

1. In early fall of 1979, [E] and his wife, [H], retained respondent to represent them in the matter of the Estate of [I], deceased brother of [E], said [I] having died intestate on September 28, 1979.

2. An attorney's fee of five percent of the gross estate was agreed upon and to be paid by said clients to respondent, their lawyer.

3. In late fall of 1979, respondent prepared and presented a first and final accounting and an Inheritance Tax Return to [E], Administrator of said Estate of [I], said decedent, for him to sign, but which met with resistance; and said [E] refused to sign the papers.

4. The dispute over the estate was not settled,

and respondent contacted an attorney [J] in and about April of 1980 to help him conclude the estate, and the [E] parties were agreeable to the same assuming that [J's] fee would be paid from funds already paid to respondent, respondent already having been paid at this time the sum of $1,785 representing his entire attorney's fee for five percent as aforesaid for said work.

5. Attorney [J] did complete the estate work and charged $300 to the estate, but the estate per [E] refused to pay the same because of the aforesaid assumption.

6. A magistrate's judgment was obtained by Attorney [J] against the estate for the $300 unpaid fee while respondent has acknowledged his responsibility for paying Attorney [J's] fee. There is no indication of said fee having been paid to date.

## CHARGE VI ([F])

1. Respondent represented a [F] relative to a bank matter and a property dispute that she had with her sister-in-law.

2. Respondent gave [F] certain legal advice relative to an effort to recover damages from a contractor who had allegedly installed sewer lines improperly at [F's] home, an effort to resolve differences between [F] and another party relative to certain real property and an effort to recover interest payments supposedly due from one [  ] Bank.

3. Respondent did render certain legal services to [F] relative to advice on the property dispute but failed to take any action on the other matter.

4. Respondent was paid a $100 retainer fee for his legal services hereunder.

5. Respondent began his representation of [F] on September 28, 1979, and on February 7, 1980 the attorney/client relationship between them had de-

teriorated to such an extent that there was no effective relationship between the parties as of that date and from that date forward, leaving respondent to conclude that the attorney/client relationship had terminated.

6. Respondent did not return any part of the $100 paid him by [F] as a retainer hereunder.

## V. CONCLUSIONS OF LAW

Respondent has violated the following Disciplinary Rules of the Code of Professional Responsibility in the following charges or matters:

### CHARGE I ([A])

A. D.R. 6-101(A)(3), dealing with neglect by an attorney of a legal matter entrusted to the attorney's care.

### CHARGE II ([B])

Respondent has violated no Disciplinary Rules in this charge or matter.

### CHARGE III ([C])

Respondent has violated no Disciplinary Rules in this charge or matter.

### CHARGE IV ([D])

A. D.R. 2-110(A)(2), dealing with taking reasonable steps to avoid foreseeable prejudice to the client upon an attorney's withdrawal from representation.

### CHARGE V ([E])

A. D.R. 2-110(A)(3), dealing with failure to

promptly return the unearned portion of a fee paid in advance.

## CHARGE VI ([F])

A. D.R. 6-101(A)(3), dealing with neglect by an attorney of a legal matter entrusted to the attorney's care.

## VI. PRIOR RECORD

Respondent has received four prior informal admonitions basically involving the same general areas of misconduct as abovementioned.

## VII. DISCUSSION

The course of conduct followed by respondent hereunder is unfortunately attuned to neglect, inability to communicate with clients and lack of persistence in settling problems with clients which commonly occur in the course of the practice of law by private practitioners.

Respondent did not hold himself available in the [A] case, and while there is some evidence of record that [A] did wish to delay the prosecution of her divorce case, there is also evidence that she again returned to respondent with a request to pursue her divorce. Respondent did not proceed ahead but rather left her to make her own decision about obtaining other local counsel. While not an intentional act on his part, the same was still an act of neglect.

Respondent's representation of [B] was more marked by his inability to communicate with [B] than by any violation of a Disciplinary Rule. The record substantiates respondent's contention that he suggested to [B] his broaching the subject of his conviction before he would proceed on to the cus-

tody and visitation issues with regard to his children, something which [B] was not agreeable with. Communication broke down, and a charge was filed by [B] against respondent more as a result of lack of communication and understanding than anything else.

The [C] case or charge again was also marked by a breakdown in communication. There is no doubt but that respondent did a considerable amount of work for [C] and was pursuing her equity action relative to her real property claims or problem as quickly and as expeditiously as could have been expected. Respondent's wrong, if any hereunder, was in not taking time to explain to his client how long it takes to process such an equity action, the problems involved and what delay she could have expected. His response to her that "you have waited this long, you can wait a little bit longer" certainly did much to aggravate an already estranged relationship with her and certainly did help to precipitate her complaint against him.

Respondent demonstrated clear neglect in his handling of the [D] or Concerned Citizens' Taxpayers Association of [ ] Township ([G]) case, by allowing its action to be dismissed for non pros after having full notice of the same.

The [E] matter also served to reaffirm the complete inability of respondent to communicate with his clients upon the appearance of the slightest problem or question in their dealings. Instead of attempting to work out the differences with his clients, he chose again to pull away from them. He did have the good sense to contact another attorney to finish out this estate but again lapsed into a violation of a Disciplinary Rule by failing to pay this attorney the $300 which was owed him and out of

the unearned portion of respondent's fee which he had already received from the [E] parties.

The charges of [F], while not soundly based, served to bring to the fore respondent's failure to attend to the legal affairs of his client in much less than a zealous way and his ultimate inability to resolve his differences with a client.

Respondent's violations of those various Disciplinary Rules as mentioned and found above and within were established by a clear preponderance of the evidence, the necessary standard of proof for these cases: In Re Berlant, 458 Pa. 439, 328 A. 2d 471 (1974).

The board considered the possibility of a private reprimand hereunder; however the four prior informal admonitions of respondent and his seemingly undampended tendency to neglect strongly demonstrate that the effects of informal admonitions and private reprimands have been minimal and have not served the beneficial purpose of making respondent a better and more fastidious practitioner of law. The board is therefore compelled to recommend a more severe discipline than a private reprimand and which should have a beneficial impact upon respondent, being also the appropriate discipline which the board concludes should be applied under such circumstances.

Lastly, respondent appears to be on the verge of developing a pattern of neglect, and he must be forewarned that should such develop, he may expect future discipline of a much greater severity than that recommended hereunder: Office of Disciplinary Counsel v. A. Benjamin Johnson, Jr., 433 Pa. 194, 425 A. 2d 730 (1981).

## VIII. RECOMMENDATION

The board recommends that respondent be pub-

licly censured by the Supreme Court of Pennsylvania and that said court direct that all necessary expenses incurred by this board in the investigation and processing of the within petition for discipline be borne and paid for by respondent. (A statement of such expenses is attached to this report.)

Mrs. Hammerman, Messrs. Krawitz and Elliott and Mrs. Neuman did not participate in the adjudication.

### ORDER

And now, March 11, 1983, the recommendation of the Disciplinary Board dated February 22, 1983, is accepted, and it is hereby

Ordered that [Respondent] be subjected to public censure by the Supreme Court at the session of court commencing April 18, 1983, in Philadelphia. It is further ordered that respondent shall pay costs, if any, to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

Mr. Justice Larsen dissents and would suspend for one month.