**In re Anonymous No. 72 D.B. 89**

Disciplinary Board Docket no. 72 D.B. 89.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

POWELL, *Member,* December 19, 1994—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

On July 21, 1989, a petition for discipline was filed by the Office of Disciplinary Counsel.

On September 26, 1989, the matter was referred to Hearing Committee [    ] chaired by [    ], Esquire and included [    ], Esquire and [    ], Esquire.

Respondent filed an answer to petition for discipline on October 2, 1989.

A hearing on the matter was held November 20, 1989.

On February 26, 1990, respondent petitioned to be placed on inactive status and stay all proceedings pursuant to 301(e), Pa.R.D.E.

On February 27, 1990, the Hearing Committee filed its report recommending a three year suspension.

Respondent requested an extension to file a brief on exceptions on March 5, 1990.

On March 14, 1990, the Office of Disciplinary Counsel filed a brief on exceptions to the report of the Hearing Committee.

Respondent's petition to be placed on inactive status and stay of all proceedings was sent to the Supreme Court on March 14, 1990.

On March 16, 1990, the Disciplinary Board of the Supreme Court of Pennsylvania granted an extension to respondent to file a brief on exceptions.

On June 28, 1990, the Supreme Court ordered respondent to be examined by a medical expert, proceedings to be held in abeyance and respondent be transferred to inactive status.

On October 10, 1991, the Office of Disciplinary Counsel petitioned for enforcement of court's order of June 28, 1990 and for appointment of independent psychologist to conduct comprehensive examination of respondent.

Respondent advised the Supreme Court no opposition will be filed to the Office of Disciplinary Counsel's motion on October 27, 1991.

On May 21, 1992, the Supreme Court ordered respondent to submit to an independent psychological exam.

The Disciplinary Board appointed psychiatrist [A], M.D., on July 21, 1992. Dr. [A] was reappointed by order of the Disciplinary Board on October 9, 1992.

On October 28, 1992, Dr. [A] filed his report.

Office of Disciplinary Counsel filed a brief on issue of respondent's current medical competence on December 2, 1992.

On December 7, 1992, respondent advised that he will file no briefs on the issue of mental competence.

On February 7, 1994, the Disciplinary Board filed its report recommending that the proceedings resume and that respondent remain on inactive status.

By order of the Supreme Court the stay was dissolved on May 26, 1994 and the proceedings continued.

On June 6, 1994, respondent filed a brief in opposition to exceptions of Office of Disciplinary Counsel's brief.

The matter was adjudicated by the Disciplinary Board on June 22, 1994.

## II. FINDINGS OF FACT

(1) Petitioner, whose principal office is now located at Suite 400, Union Trust Building, 501 Grant Street, Pittsburgh, Pennsylvania, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and the duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rules.

(2) [Respondent] was born on January 17, 1952. He was admitted to the Pennsylvania Bar in 1980.

(3) Respondent's last known address for the practice of law was [    ].

(4) Respondent represented [B] and [C], complainants, in the sale of their residence. Respondent received a check for $38,190.03 for the benefit of complainants.

(5) Respondent did not deposit these funds in an escrow account and, instead, converted them to his own use. (Petition for discipline paragraph 8; answer 8; N.T. 145; stip. exh. G.)

(6) Respondent took $40,000 from the account in which the funds were placed with him to the [D] Casino in Atlantic City where he lost all of the funds. (N.T. 145.)

(7) Respondent attempted to cover up this loss in the following manner:

(a) He attempted to stop payment on the cashier's check which he took to [D]. (N.T. 151.)

(b) Respondent attempted to influence the bank to replace the $40,000 by having several persons phone the bank and impersonate bank employees. (Stip. 3.)

(c) Respondent filed a complaint against the bank alleging the bank wrongfully failed to replace the funds. (Stip. 2; stip. exh. B.)

(d) Respondent lied to the clients about the whereabouts of the funds and did not reveal to them that the funds were lost by him. (Stip. exh. 5.)

(e) Respondent did not cooperate with the Office of Disciplinary Counsel's investigation and, instead, evaded requests for information and the production of documents. (N.T. 156-175.)

(8) Respondent has no history of prior discipline. (N.T. 144.)

(9) Respondent admitted the wrongfulness of all of his misconduct. (N.T. 144, 151, 156.)

(10) Respondent presented three character witnesses; [E], a former private investigator in the State of Pennsylvania; [F], a passport agent in [    ] County; and, [G] a lay witness who purchased a business from respondent. All three witnesses testified to the respondent's general truthfulness, general reputation for honesty and respondent's reputation in the community as a law-abiding citizen. (N.T. 34-35, 41-42, 50.)

(11) Dr. [H], Ph.D., a clinical forensic psychologist testified for respondent. Dr. [H] diagnosed respondent as having an inadequate personality disorder with passive, aggressive features and a depressive disorder. (N.T. 67.) Dr. [H] further testified that respondent was not a pathological gambler. (N.T. 73.)

(12) [I], a gambling therapist, testified for respondent. [I] testified that he believed respondent was a compulsive gambler up to the time he misused clients' funds. (N.T. 113.) [I] concurs that respondent has some more deep-seated problems than just gambling addiction. (N.T. 119.)

(13) Both [H] and [I] testified that respondent's psychological problems led directly to respondent's misconduct in converting the funds and using them for gambling. (N.T. 70, 114.)

(14) Dr. [H] testified that the deception was not linked to respondent's psychological disorders. (N.T. 85.)

(15) [A], M.D., examined respondent pursuant to the order of Supreme Court dated May 21, 1992, and the

appointment by the Disciplinary Board. Dr. [A] recommended that respondent not practice law because of his psychological difficulties. (Letter report of Dr. [A] dated October 28, 1992.)

(16) Respondent repaid, in full, clients' funds which he previously converted. (N.T. 149; Stip. exh. M.) Respondent also partially repaid clients for attorney's fees they expended in attempting to get their funds returned. (N.T. 195.)

## III. CONCLUSIONS OF LAW

The board finds that respondent violated the following Disciplinary Rules of the Code of Professional Responsibility:

(a) D.R. 1-102(A)(2), which provides that a lawyer shall not circumvent a Disciplinary Rule through actions of another;

(b) D.R. 1-102(A)(3), which provides that a lawyer shall not engage in illegal conduct involving moral turpitude;

(c) D.R. 1-102(A)(4), which provides that a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation;

(d) D.R. 1-102(A)(5), which provides that a lawyer shall not engage in conduct that is prejudicial to the administration of justice;

(e) D.R. 1-102(A)(6), which provides that a lawyer shall not engage in any other conduct that adversely reflects on his fitness to practice law;

(f) D.R. 9-102(A), which prohibits the commingling of client funds with an attorney's own funds among other things;

(g) D.R. 9-102(B)(3), which requires an attorney to maintain complete records of all funds of a client coming into his possession and to render appropriate accounts to the client regarding them; and

(h) D.R. 9-102(B)(4), which requires an attorney to promptly pay or deliver to the client as requested by the client the funds in the possession of the lawyer which the client is entitled to receive.

The board also finds as a conclusion of law that respondent is currently incapacitated from practicing law in the Commonwealth of Pennsylvania by reason of disability pursuant to Rule 301(e), Pa.R.D.E.

## IV. DISCUSSION

This case involves the balancing of serious misconduct against credible evidence of partial mitigation under the *Braun* standard.

Because respondent freely admitted the misconduct at issue here, the factual background may be briefly summarized as follows. The respondent represented the complainants and acted as settlement agent in the sale of their house at the closing. (Stip. exh. A.) He received in all $38,190.03 in funds which he did not escrow or disburse to them. (See stip. exh. G.) Instead, respondent deposited into his general account this amount. (Stip. exh. G.) He then withdrew $40,000 by cashier's check which he took to a casino in Atlantic City, New Jersey. (Stip. exh. G.) There he lost the entire sum gambling. (N.T. 145.)

After the loss, respondent attempted to cover up the loss of the funds. He lied to the complainants telling them their funds were held up by a mistake made by

the bank. (Stip. exh. F.) Respondent started a frivolous lawsuit against the bank, although he did not serve the complaint upon the bank. (Stip. exh. B.) Respondent also had two unnamed accomplices impersonate bank officials in an attempt to have payment on the check stopped after it had already been legally negotiated by the casino. (Stip. no. 3.)

Because the misconduct in this case was admitted, the board's task in this matter becomes recommending the proper sanction. The Supreme Court in *Office of Disciplinary Counsel v. Braun* stated that where the conversion of funds is intentional the most severe sanction is warranted. *Office of Disciplinary Counsel v. Braun,* 520 Pa. 157, 160, 553 A.2d 894, 895 (1989). However, the Supreme Court has always declined to establish a per se rule concerning conversion. *Office of Disciplinary Counsel v. Lucarini,* 504 Pa. 271, 280, 472 A.2d 186, 190 (1983). The board has stated that the critical factors in each of the [cases involving conversion] involves consideration of both the respondent's background and the actions and circumstances relating to the commingling and/or conversion. *In re Anonymous No. 58 D.B. 89,* 10 D.&C.4th 545, 552-553 (1990).

This brings us to the evidence concerning mitigation presented by respondent. Respondent presented the testimony of two expert witnesses regarding his mental condition at the time of the conversion. These witnesses were [H], Ph.D., a clinical and forensic psychologist and [I], a gambling therapist. Dr. [H] diagnosed respondent as having inadequate personality disorder with passive aggressive features and a depressive disorder (N.T. 67) and [I] testified that at the time of the conversion that respondent was a compulsive gambler. (N.T.

113.) Both [H] and [I] testified that respondent's psychological condition was a causal factor in respondent's misconduct in converting the funds and using them for gambling. (N.T. 70, 114.)

This testimony meets the guidelines established in *Office of Disciplinary Counsel v. Braun.* The question under the *Braun* standard is whether the psychological condition is a causal factor in the misconduct. *Braun, supra* at 161, 553 A.2d at 895. However, Dr. [H] also testified that the deception which followed the conversion was not related to respondent's psychological disorders. (N.T. 85.) Therefore, in this case, we only have partial mitigation and we must look to balance the mitigation with the seriousness of the offenses committed. Dishonesty, particularly with regard to false swearing and similar offenses, has always been viewed as one of the most serious types of misconduct an attorney can commit. As the Supreme Court stated in *Office of Disciplinary Counsel v. Grigsby,* in choosing an appropriate punishment, "[there] is no doubt that dishonesty on the part of an attorney establishes his unfitness to continue practicing law." *Office of Disciplinary Counsel v. Grigsby,* 493 Pa. 194, 200, 425 A.2d 730, 733 (1981). See also, *Office of Disciplinary Counsel v. Wittmaack,* 513 Pa. 609, 522 A.2d 522 (1987).

The primary purpose of the disciplinary system cited regularly in opinions of the Supreme Court is the protection of the public and the courts from unfit attorneys. See *e.g., Braun, supra* at 164, 553 A.2d at 897. Therefore, one of the most important functions of any disciplinary proceeding is determining the fitness of the attorney to continue to practice. *Lucarini, supra* at 281, 472 A.2d at 190.

In this case we have the testimony of an independent medical expert, [A], M.D., who reported on October 28, 1992, on his conclusions based on his independent examination of the respondent pursuant to a Supreme Court order staying proceedings. The focus of this examination was whether the respondent could contribute to his defense in these proceedings and Dr. [A] determined that he could. ([A] report at 6-7.) In addition, he expressed the opinion that at the time of the examination respondent would not be able to practice law. ([A] report at 5-6.)

While this examination occurred over two years ago, there is no evidence before the board at this time that the respondent has sought the psychiatric treatment recommended by all three experts in this proceeding. Nor is there any other evidence showing a change in the respondent's psychological condition. Therefore, it is necessary to protect the public by requiring that respondent establish his psychological rehabilitation before resuming the practicing of law.

The readmission process under Rule 218(c)(3)(i) would allow a searching inquiry into respondent's mental condition and thus would serve the purpose of determining respondent's fitness to practice law. This consideration suggests either a suspension or disbarment to be appropriate in this case.

The presence of the mitigating circumstances regarding the conversion argues for a lesser sanction than would otherwise be imposed while the dishonest conduct involved in the deception argues for a greater sanction. In order to balance the competing considerations present in this case and in order to show the severity and extreme

nature of the misconduct which occurred, the board recommends that the respondent receive a five year suspension, the most lengthy suspension short of disbarment possible under the Rules of Disciplinary Enforcement.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends that respondent, [    ], be subjected to a suspension from the practice of law for a period of five years, retroactive to June 28, 1990, the date respondent was transferred to inactive status pursuant to Rule 301(e), Pa.R.D.E.

It is further recommended that the court direct that respondent pay all of the necessary expenses incurred in the investigation and processing of this matter pursuant to Rule 208(g), Pa.R.D.E.

Board Members Kerns, Lieber and McGivern did not participate in the adjudication.

## ORDER

And now, January 13, 1995, upon consideration of the report and recommendations of the Disciplinary Board dated December 19, 1994, it is hereby ordered that [respondent] be and he is suspended from the bar of this Commonwealth for a period of five years, retroactive to June 28, 1990, and he shall comply with all the provisions of Rule 217, Pa.R.D.E.

It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

Mr. Justice Montemuro is sitting by designation.