425 A.2d 730

**OFFICE OF DISCIPLINARY COUNSEL, Petitioner,**

**v.**

**John T. GRIGSBY, III, Respondent.**

Supreme Court of Pennsylvania.

Argued Oct. 20, 1980.

Decided Feb. 5, 1981.

John W. Herron, Samuel D. Miller, III, Philadelphia, for petitioner.

L. Jackson Thomas, II, West Chester, for respondent.

Before O'BRIEN, C. J., and ROBERTS, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION

LARSEN, Justice.

This attorney disciplinary proceeding presents the following questions: whether there is sufficient evidence to prove that John T. Grigsby, III (respondent) filed a sworn pleading which he knew was false; whether respondent's conduct violates Disciplinary Rule 1–102 of the Code of Professional Responsibility [hereinafter cited as DR 1–102]; and whether disbarment is an appropriate sanction, considering respondent's history of disciplinary violations.

Respondent, a lawyer in the Philadelphia area since 1963, has a history of disciplinary infractions. In 1970, the Philadelphia Bar Association Committee of Censors (Committee) privately reprimanded respondent for failure to act competently because he mishandled a client's case during 1966–67. The Committee also noted that respondent's testimony at a hearing on the matter was misleading. In 1971, the Committee again privately reprimanded respondent for failure to act competently because he neglected a client's case during 1968–69.

Respondent has also been before this Court in a disciplinary proceeding which involved two separate incidents of misconduct, *Office of Disciplinary Counsel v. Grigsby*, Disciplinary Board File No. 5 D.B. 76. In one incident, respondent filed a false petition seeking counsel fees in 1973. (He

had been court-appointed counsel in a murder case tried in 1971–72.) The petition was fraudulent and was filed for the purpose of obtaining fees for work respondent did not perform. In the other incident, respondent filed a false complaint in connection with a tenant's negligence action against a landlord. The tenant's accident occurred on February 27, 1969, but the complaint which was filed on March 1, 1971 falsely showed the date of accident as March 1, 1969. Respondent had missed the statute of limitations, so he changed the date on the complaint after the tenant had signed it. The fraud was eventually discovered and the action was barred. On April 19, 1979 this Court publicly censured respondent for these incidents.[1]

In this case, two charges have been brought by the Office of Disciplinary Counsel (Petitioner). Respondent admits one of the charges: filing a false sworn application for a driver's license. Because a 1968 judgment against respondent arising out of a car accident remained unsatisfied, respondent's driver's license (issued to "John T. Grigsby, III") was revoked in 1972. In 1975, respondent submitted a sworn application for a driver's license under the name "John T. Grigsby, Jr." In the application he falsely stated that no license had ever been issued to him, that no judgments against him arising out of a car accident were unsatisfied, and that no license issued to him had ever been revoked. A new license was issued in response to this application but revoked when the fraud was discovered.

Respondent denies the other charge that he filed a sworn pleading known to be false in connection with a garnishment proceeding. The judgment creditor who held the unsatisfied 1968 judgment sought to execute against respondent by garnishing his checking account. Respondent resisted the execution by filing a Petition to Stay Writ of Execution which stated that funds in the checking account belonged to clients and could not be reached by his creditor. Soon

1. Justices Nix, Manderino, and Larsen voted for a public censure. Former Chief Justice Eagen and Justice Roberts voted for a six month suspension. Chief Justice O'Brien did not participate in the decision.

afterward, however, respondent voluntarily surrendered the account to the creditor. Petitioner maintains that respondent owned the funds in the account and that the pleading was false.

A Hearing Committee found both charges true and recommended a one-year suspension. These findings and recommendation were reviewed by the Disciplinary Board, affirmed, and submitted to this Court. On July 7, 1980, this Court rejected the recommendation of the Disciplinary Board, suspended respondent immediately, and directed him to show cause why he should not be disbarred.

Respondent contends that there was insufficient evidence to prove the charge that he filed a sworn pleading known to be false. This contention is without merit. Evidence is sufficient to prove unprofessional conduct if a preponderance of the evidence establishes the conduct and the proof of such conduct is clear and satisfactory. *In re Berlant*, 458 Pa. 439, 328 A.2d 471 (1974). The conduct may be proven solely by circumstantial evidence. *Lemisch's Case*, 321 Pa. 110, 184 A. 72 (1936); *Salus's Case*, 321 Pa. 106, 184 A. 70 (1936). In this case, various checks which the respondent had drawn on the garnished account were introduced into evidence. The checks were made out to "cash" (cash withdrawal), the "Disciplinary Board of the Supreme Court of Pa." (a personal annual fee), and "Citizens for Judge Carson" (a political contribution). Because these payments were clearly for private purposes, the checks circumstantially prove that the account was not a client account.[2] Additionally, respondent later voluntarily surrendered the account to the judgment creditor, an act inconsistent with client ownership. Finally, respondent's own testimony[3] in the garnishment proceeding supported his ownership: He

2. Respondent's attack on the relevancy of these checks is ill founded: the checks clearly tend to prove his ownership of the account and do not equally support an inference of client ownership.

3. June 24, 1974 Hearing on Petition to Stay Writ of Execution, *Solomon v. Grigsby*, No. 30 May Term, 1974, Execution (Court of Common Pleas of Chester County, Pa.).

testified that he could not state why the client funds were being held and he could not identify the clients who owned the funds. He also admitted that he paid his secretary from the account. This evidence is sufficient to support the conclusion that the account was not a client account, contrary to respondent's sworn pleading.

■ The scope of this Court's review is de novo as to both the findings and the recommendations of the Disciplinary Board. Pennsylvania Rules of Disciplinary Enforcement 208(e) [Rules hereinafter cited as Pa.R.D.E. ——]; *Matter of Green*, 470 Pa. 164, 368 A.2d 245 (1977). Based on respondent's admission, we find he filed a sworn application for a driver's license, which he knew to be false; based on the evidence, we find that respondent filed a sworn pleading, which he knew to be false, in order to resist the garnishment of a personal bank account.

■ There need be little discussion about whether respondent's conduct constitutes "misbehavior" and violates DR 1–102.[4] His conduct clearly involves "dishonesty, fraud, deceit, or misrepresentation" within the ambit of DR 1–102(A)(4). Respondent's fraudulent conduct clearly violates DR 1–102(A)(3) which prohibits "illegal conduct involving moral turpitude. *See Yurick v. Commonwealth Board of Osteopathic Examiners*, 43 Pa.Cmwlth. 248, 402 A.2d 290 (1979). (Fraud is the touchstone of "moral turpitude").

An attorney's violation of the Disciplinary Rules subjects him to the imposition of discipline. Pa.R.D.E. 203(a). One of the disciplines specified in Pa.R.D.E. 204(1) is disbarment and petitioner contends that respondent should be disbarred. We now consider whether disbarment is appropriate in this case.

**4.** Disciplinary Rule 1–102 of the Code of Professional Responsibility provides, in pertinent part:
DR 1–102. MISCONDUCT
(A) A lawyer shall not: . . .
(3) Engage in illegal conduct involving moral turpitude.
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

This Court has held that false swearing is an "egregious species of dishonesty" which goes to the heart of the legal profession:

> We are reminded of the comment of Daniel Webster: "Tell me a man is dishonest, and I will answer he is no lawyer. He cannot be, because he is careless and reckless of justice; the law is not in his heart, is not the standard and rule of his conduct." D. Webster, Speech to the Charleston, South Carolina Bar, May 10, 1847.

*Montgomery County Bar Association v. Hecht*, 456 Pa. 13, 21 n.9, 317 A.2d 597, 602 n.9 (1974). In choosing an appropriate punishment, this is no doubt that dishonesty on the part of an attorney establishes his unfitness to continue practicing law. Truth is the cornerstone of the judicial system; a license to practice law requires allegiance and fidelity to truth. Respondent's false swearing and dishonest conduct are the antithesis of these requirements. We deem disbarment to be the appropriate remedy for false swearing.

■ Despite respondent's arguments to the contrary, we cannot distinguish between dishonesty involving client matters and dishonesty in private matters: the seriousness of respondent's misconduct is not lessened by the fact that the victims of his fraud were not his clients. *See Maryland State Bar Association, Inc. v. Agnew*, 271 Md. 543, 318 A.2d 811 (1974) (disbarment of former Vice-President Spiro T. Agnew).

■ Additionally, disbarment is appropriate in cases of recidivist misconduct.[5] *Matter of Green, supra.* Respondent's record of repeated disciplinary violations cannot be ignored.

■ Respondent asserts that he should not be disbarred because all the incidents which resulted in this disciplinary

5. Respondent notes that in several prior decisions this Court has imposed a suspension and not disbarment for dishonesty. *Berlant, supra; Hecht, supra; Office of Disciplinary Counsel v. Walker*, 469 Pa. 432, 366 A.2d 563 (1976). However, those cases are distinguishable from respondent's because he has a history of disciplinary infractions.

action occurred prior to the 1979 public censure. The 1979 censure by this Court for entirely unrelated misconduct can in no way "cover" the offenses in this case. A censure or any other sanction does not purport to exonerate prior misbehavior. In fact, the only relevance the 1979 censure has to this case is in determining punishment.

▇ Finally, respondent suggests that *Regents of University of California v. Bakke*, 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978) supports his cause, and that rehabilitative sanctions should be favored over retributive sanctions. In *Bakke*, Mr. Justice Marshall did express a concern for the small number of Black attorneys in this country, and respondent is a Black attorney, practicing in Philadelphia since 1963. However, the *Bakke* case dealt with admissions to a professional school, and we fail to see how it is apposite to a case of professional misconduct occurring after seventeen years of practice. Furthermore, the race of an attorney can have absolutely no bearing on the appropriate punishment for professional misconduct.

▇ The purpose of the Code of Professional Responsibility and the Rules of Disciplinary Enforcement is to protect the public, the profession and the courts. Whenever an attorney is dishonest, that purpose is served by disbarment. Rehabilitation may occur, but only after a sanction is imposed, and primary responsibility for rehabilitation rests with the sanctioned attorney.[6]

**6.** Additionally, respondent makes the meritless argument that he should not be disbarred because the petitioner is *also* guilty of professional misconduct. Respondent correctly notes that petitioner is the attorney for the Disciplinary Board (Pa.R.D.E. 208(e)(2)). Respondent erroneously concludes that the petitioner is guilty of misconduct—not observing his clients wishes—for recommending disbarment which is more severe than the suspension recommended by the Disciplinary Board.

In fact, petitioner is properly carrying out his duties as prosecutor in disciplinary proceedings. Pa.R.D.E. 207(b)(3). From this perspective the real client of the office of Disciplinary counsel is the public.

However, the major difficulty with respondent's argument is that it exhibits a lack of the necessary ethical perception demanded of members of the legal profession. *See Matter of Leopold*, 469 Pa. 384, 366 A.2d 227 (1976). Respondent's assertion that another attorney is

We conclude that disbarment is necessary to protect the public, the profession, and the courts from a lawyer who has repeatedly engaged in professional misconduct. Pursuant to our constitutional power to supervise the conduct of attorneys who are officers of this Court, we enter an order disbarring respondent.

ROBERTS, J., filed a dissenting opinion in which O'BRIEN, C. J., joined.

NIX, J., did not participate in the consideration or decision of this case.

## ORDER

AND NOW, this 5th day of February, 1981, it is ORDERED, as follows:

1. That JOHN T. GRIGSBY, III, is disbarred from the practice of law.

2. That JOHN T. GRIGSBY, III, shall comply with the provisions of Rule 217 of the Rules of Disciplinary Enforcement of the Supreme Court of Pennsylvania pertaining to disbarred attorneys.

ROBERTS, Justice, dissenting.

In April of 1979, when this Court was presented with respondent's record, former Chief Justice Eagen and I took a minority view and agreed with the recommendation of the Disciplinary Board that this Court should have suspended respondent for a period of six months, and should not have entered a mere public censure. Although this Court is now presented with additional, substantiated charges of serious misconduct by respondent, including a falsely sworn application for a driver's license, there is, in light of the majority's previous public censure, no basis in fairness for disbarment. The charges now before us all pre-date this Court's public censure. There is no evidence that, since this censure,

also guilty of misconduct can in no manner lessen *his* culpability or lessen *his* punishment.

respondent has engaged in any improper conduct. On this record, I would agree with the Disciplinary Board that suspension, and not disbarment, is the appropriate penalty. In view of the seriousness of the present charges, however, I would suspend respondent for a period of three years, rather than one year as recommended by the Board.

O'BRIEN, C. J., joins this dissenting opinion.