## In re Anonymous Nos. 24 D.B. 85, 86 D.B. 85 and 60 D.B. 86

Disciplinary Board Docket nos. 24 D.B. 85, 86 D.B. 85 and 60 D.B. 86.

TUMOLO, *Member,* March 31, 1989—

### HISTORY OF PROCEEDINGS

The history of these proceedings requires particular note becuase of the long period of time which elapsed between the time of the alleged disciplinary violations and this adjudication. The board again emphasizes that when a time gap exists between the alleged offense and the filing of a disciplinary complaint, particular emphasis must be placed on timely prosecution. Even where violations are established, these lengthy delays do normally mitigate any discipline to be imposed.

Beginning with the [A] and [B] estates, at no. 24 D.B. 1985, the alleged disciplinary infractions oc-

curred in 1976. The Office of Disciplinary Counsel found that the respondent had been out of trust with regard to these estates while conducting a separate investigation with regard to Attorney [C] in 1978. No charges were filed against respondent until March 28, 1985. The filing of charges was at least seven years after the alleged offense came to light, and the adjudication is not occurring until 11 years after knowledge of the infraction, and 13 years after the alleged occurrence.

Next, the [D] proceeding at no. 86 D.B. 1985, is one in which the alleged infractions occurred in 1976, charges were filed in 1985, and the adjudication is being finalized in 1989. These are nearly the same time gaps as in no. 24 D.B. 1985. Some justification for the delay here is found in the tangled web of *[D] v. [Respondent],* no. [  ], ([  ] County) which wound its way from the lower court to the Superior Court, and finally terminated with the denial of a petition for allowance of appeal to the Supreme Court of Pennsylvania in March 1983.

A second charge at no. 86 D.B. 85 involved respondent's purchase of a house in 1977. The petition for discipline was filed in 1985, and is at the point of final adjudication in 1989.

Since the board finds [E] as devoid of merit as did the hearing committee, no recount of the chronology in that case will be set forth.

On October 12, 1988, the majority of the hearing committee recommended that the board find that respondent violated D.R. 1-102(A)(4), D.R. 9-102(A), D.R. 1-102(A)(6), and D.R. 6-101(A)(3). The majority recommended that the [E] complaint be dismissed. These findings on violations resulted in the majority recommending that respondent be suspended for six months.

The dissenting hearing committee member recommended that all charges be dismissed.

A review of the facts shows how this adjudication could have a hearing committee sharply divided in its recommendation.

A vast majority of the relevant facts are established by stipulations entered into by the parties. These stipulations are not disturbed by the board, and it serves no purpose to repeat them herein. The disputed facts will be established in the discussion of each charge.

## DISCUSSION AND CONCLUSIONS
### 24 D.B. 85
#### [A] and [B] Estates

[A] died on April 2, 1975, and his will was duly admitted to probate in [ ˙ ] County. The estate employed the services of Attorney [C], who in turn employed respondent as a consultant. He seemed to have particular expertise in the area of estates since he was employed as a Trust Officer at [F] National Bank. Respondent had a checking account at the bank which was maintained under the heading of escrow account, and into which he deposited funds from both the [A] and the [B] estates. However, he also deposited his own funds into this escrow account committing a per se violation of D.R. 9-102(A) by commingling these funds.

The far more serious charge however, is breach of D.R. 1-102(A)(4) involving dishonesty, fraud and deceit. The basis of that charge is that between January and June 1976, the balance in the escrow account fell at least $6,000 below what should have been there to cover the outstanding balances of the two estates. The petitioner asserts that it would have been impossible to go several thousand dollars

out of trust by mistake, and that is enough to establish that there was intentional conduct sufficient to establish a violation of the rule prohibiting an attorney from engaging in conduct involving dishonesty, fraud and deceit. Respondent, on the other hand, points out that since he was an employee of [F] National Bank, he did not receive regular checking account statements from his employer. Respondent fortifies his position by pointing out that all funds were returned to the respective estates before petitioner commenced any investigation, and not one penny was lost. In addition, respondent returned all fees to the estates which he may have earned. No complaint was filed by either estate.

What is most bothersome is that the escrow account went at least $6,000 out of trust which is an indication that the conduct was not a mistake and there is no doubt that a violation can be proved by circumstantial evidence. However, all funds were returned by respondent before the office of disciplinary counsel began any investigation of his activities; all fees earned as a consultant on these estates were returned; no complaint was filed by anyone involved in the estates; neither estate incurred a monetary loss; and, 13 years have elapsed since the occurrence *without a repeat of the conduct by respondent.*

All of these circumstance matters strongly indicate that respondent did not intend to defraud the estates. The board does not find clear and satisfactory evidence of dishonesty, fraud or deceit. *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872 (1986).

The board finds a per se violation of D.R. 9-102(a), but that the requisite intentional conduct

necessary for fraud, dishonesty or deceit in a violation of D.R. 1-102(A)(4) is not present.

## 86 D.B. 85
### [D] and [F] National Bank

In 1973, respondent formed [G] Inc., a Pennsylvania corporation in which he owned 50 percent of the stock, and the other 50 percent was owned by [D]. These two obtained and renovated a building in which they housed a restaurant. Almost from the beginning the business went poorly. By 1976, both respondent and [D] decided to sell, since debts were substantially outweighing profits. A purchaser named [H] was found, apparently by Attorney [C]. After a substantial period of negotiation, [H] agreed to buy all of the stock of [G] Inc., for $160,000. However, the sale was to be accomplished by the assumption of outstanding debts of the corporation with a balance of the proceeds to be divided between [D] and respondent. At the closing, [D] was separately represented by Attorney [I], and [H] paid all of the proceeds to his attorney, [C], to be distributed in accord with the agreement. The testimony developed in the lower court showed that [C] paid $51,700 to respondent, and that respondent accounted for all of that money. The problem revolves around the fact that when the outstanding mortgage, equipment loan, and other debts are subtracted from the $160,000, there clearly should have been $76,353.03 remaining. Since respondent wanted out of the restaurant business, he agreed to collateralize $30,000 of [H's] $45,000 loan at [F] National Bank. The $45,000 was a part of the $160,000 [H] used in the purchase of [G] Inc. But, respondent requested and received a $30,000 note from [G] Inc., in order to insure against the loss of

his collateral. The note was publicly recorded, but never executed upon. Respondent contended that he had no reason to execute since [H] apparently has paid the bank. But as the hearing committee and dissent both recognized, the lower court somehow inferred that respondent received monies by this note, or some other secret agreement, that he did not account for. Both the majority of the hearing comittee and the dissent have the same problem with finding credible evidence in the lower court transcript.

The hearing committee found:

"Since the trial court had the opportunity to observe the witnesses in their demeanor, we will give appropriate weight to its evaluation of the credibility of those witnesses, although a reveiw of the transcript in that trial leaves one appalled at the apparently lack of credibility of many of the witnesses."

The dissent went considerably further in finding that:

"Frankly, I find not only the witnesses were liars, but I found that the court made some rulings that I found rather unbelievable."

What started out as a request for an accounting in the lower court ended up as a determination that respondent had defrauded [D]. Since the parties are different, the board is not bound by the findings in *[D] v. [Respondent]*. There is no clear and satisfactory evidence that respondent received anything more than $51,700, all of which he accounted for. The hearing committee found the lower court inferred the receipt of additional monies by respondent. When the transcript and lower court opinion are reviewed, "inferred" is the best characterization that one can apply. That inference does not rise to the standard of clear and satisfactory proof that

respondent defrauded [D]. There is no clear and satisfactory evidence that respondent received any money, other than what he accounted for. In fact, there is no method of subtraction from the $160,000 purchase price which equals the $30,000 note, or the amount the lower court charged respondent with having received. And the group Exhibit G, entered into evidence in the civil case, in no way equates with the civil adjudication. Put more simply, the facts that are on the record do not support the civil court finding. If respondent had gone to the closing as the attorney for [D], and under those circumstances had left the funds unaccounted for, the conclusion would be different. However, at the closing all of the parties were represented by attorneys, and *none of them are able to present a proper accounting for the funds either at the underlying civil proceeding, or in these disciplinary proceedings*. Since respondent did not even get the funds at the closing, a finding of fraud on his part without clear and satisfactory evidence that he received the funds would be improper. Again, the board recognizes that the charge can be proved circumstantially. *Office of Disciplinary Counsel v. Grigsby*, 493 Pa. 194, 425 A.2d 730 (1981), and *Keller, supra*. But the circumstances do not rise to the level of clear and satisfactory proof. The board will therefore dismiss these charges.

With regard to the second charge in complaint no. 86 D.B. 85, respondent sought to purchase a new home in 1977, and in conjunction therewith obtained a $30,000 mortgage from his employer. Respondent could not certify his own title. He should have retained another attorney to represent him. Instead, he signed the name of Attorney [J] to the checks issued by [F] National Bank, when in

fact he was handling the transaction himself. Respondent never revealed the true set of circumstances to his employer.

Subsequent to the closing, respondent recorded the bank's mortgage, but not the deed. The deed was not recorded until three years later, and the explanation seemed to be that respondent simply forgot to record the deed.

There is no dispute that the facts as recited occured.

The board therefore concludes that there is a violation of D.R. 1-102(A)(4) prohibiting an attorney from engaging in conduct involving fraud, dishonesty and deceit. There is also a violation of D.R. 1-102(A)(6) prohibiting an attorney from engaging in conduct which adversely affects the practice of law. But there is no violation of Disciplinary Rule 6-101(A)(3) which prohibits an attorney from neglecting a legal matter entrusted to him. Respondent was not representing anyone, except himself. However, there are substantial mitigating circumstances in that the failure to record was at least as injurious to respondent as it was to the bank. Obviously, it substantially injured respondent's ownership rights in the land, and to conclude that this was anything more than a mistake would be preposterous. It is true that the bank's security interest is impaired until the deed is recorded, but any harm which may have occurred has been cured. Further, the bank has never complained.

In representing that Attorney [J] was his counsel in this transaction, respondent was obviously trying to save time and money. He should not have done this, and it is a technical violation of the rules. But when no harm has accrued to anyone, and no complaint was raised by the bank, it is difficult to

recommend severe punishment for someone 12 years after these technical violations.

## 60 D.B. 86 ([E])

Respondent and his wife owned a property located on [ ] Avenue in [ ], Pa. The first floor of the dwelling was rented to the [Es]. Respondent knew that Mr. [E] had applied for Social Security disability benefits, and aided him in obtaining these benefits without taking any fee. No doubt this free work was motivated by Mr. [E's] desire to purchase the building he was a tenant in.

Initially, an agreement was made to sell the subject property to the [Es] for $18,000. However, the [Es] could not qualify for a mortgage.

Thereafter, in October 1983, Mr. [E] received a $7,000 lump-sum disability benefit from Social Security, and was able to use $5,000 of this money as a down payment on the purchase of the property. Respondent lowered the price of the property to $17,000 and agreed to carry a mortgage for $12,000. The mortgage payment from the [Es] to respondent was $165 per month, or only $25 more a month than Mr. [E] was paying in rent. In addition, Mr. [E] gained the benefit of the tax deductions, and the equity being derived from the purchase of the property.

A closing was held on December 29, 1983. Respondent presented a deed in which he signed both his and his wife's name. Although throughout the transaction respondent was representing both himself and Mr. [E], again he charged [E] no money and reflected that nothing was charged to them on the HUD closing form. The deed and mortgage, however, were not recorded until June 20, 1984, and it was alleged that the description in the deed was inaccurate.

The Office of Disciplinary Counsel charged under these facts that respondent had violated D.R. 1-102(A)(4) concerning an attorney engaging in conduct involving dishonesty, fraud, deceit or misrepresentation; D.R. 1-102(A)(6) concerning an attorney engaging in conduct that adversely reflects on his fitness to practice law; D.R. 5-101(A) concerning an attorney accepting employment when the exercise of his professional judgment on behalf of his client may be affected by his own financial, business, property or personal interests; and D.R. 5-104(A) concerning a lawyer entering into a business transaction with a client wherein they have differing interests.

Both the majority of the hearing committee and dissent found the charges utterly without merit. The board concurs.

It was contended that respondent had signed his wife's name to the deed transferring property owned by the entireties. Factually this is true. However, respondent's wife testified that she did not want to attend the closing; that she authorized her signature to be placed on the deed by respondent; and, that she ratified and affirmed the signature. Absolutely no harm was done to anyone. The [Es] further made the contention that there were certain defects in the house of which they were not aware prior to purchase. Both the majority of the hearing committee and the dissent found the testimony of the [Es] to be absolutely incredible. As the majority pointed out, it would be absurd to find that the [Es] had rented for a substantial period of time the property they had purchased, yet had not made an adequate inspection so as to enable them to make an intelligent purchase.

There is no merit to the claim that the description set forth in the deed was inaccurate since the [ ] County Assessment Office accepted respondent's

description and revised the tax bill appropriately. Although the description may have been drawn differently, if any mistake was made at all, it was without injury.

The [Es] contended that the property was not in conformity with the applicable zoning laws, but since it was a non-conforming structure, it did not have to be. In short, no applications for variances or exceptions were needed since the property was non-conforming and could retain the use for which the [Es] rented and purchased the property.

Even though respondent did not immediately record the deed and mortgage, it was always known to all of the parties that there was a pre-existing blanket mortgage on the property which had to be released before a general warranty deed conveying the property from respondent to the [Es] could be recorded. Respondent testified that he did not want to sell the property in December 1983, but the [Es] were insistent on buying the property as soon as possible. The deed and mortgage were recorded, and no harm accrued.

The [Es] were never charged an attorney's fee, and never had any contractual relationship for respondent to do anything for them. The conclusion is apparent that respondent was of substantial assistance to the [Es], and in fact did not cause any harm to them. The board recommends that all charges under no. 60 D.B. 86 be dismissed.

## CONCLUSION

In his handling of the [A] and [B] estates, respondent commingled funds violating D.R. 9-102(A).

Respondent also violated DR. 1-102(A)(4) and D.R. 1-102(A)(5) when he represented himself at his own closing, rather than paying another attorney to do it.

But these violations occurred in 1976 and 1977 without a repeat of this conduct. The board does not believe a suspension 12 years after the most proximate offense is appropriate.

Accordingly, respondent shall receive a private reprimand.

Messrs. Schwartzman and Eckell dissent and would dismiss all charges.

Mr. Keller did not participate in the adjudication.

## ORDER

And now, March 31, 1989, upon consideration of the report and recommendation of Hearing Committee [   ] and dissenting opinion filed October 12, 1988; it is hereby ordered and decreed, that the said [respondent] of [   ] County, be subjected to private reprimand by the disciplinary board of the Supreme Court of Pennsylvania as provided in rule 204(a)(5) of the Pennsylvania Rules of Disciplinary Enforcement at the next session of this board. Costs are to be paid by respondent.