637 A.2d 266

**OFFICE OF DISCIPLINARY COUNSEL, Petitioner,**

**v.**

**Deborah GRIFFIN, Respondent.**

**Disciplinary Board No. 76 DB 91.**
**No. 3 Disciplinary Docket No. 3.**

Supreme Court of Pennsylvania.

Jan. 21, 1994.

## ORDER

PER CURIAM:

AND NOW, this 21st day of January, 1994, upon consideration of the Report and Recommendations of the Disciplinary Board dated November 6, 1992, it is hereby

ORDERED that Deborah Griffin be and she is suspended from the Bar of this Commonwealth for a period of two (2) years and she shall comply with all the provisions of Rule 217, Pa.R.D.E. It is further ORDERED that respondent shall pay

costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

PAPADAKOS, J., files a dissent.

PAPADAKOS, Justice, dissenting.

This Court proposes to sanction this errant Attorney by suspending her for two years. I dissent vigorously and call for a Rule to Show Cause why she should not be disbarred.

This Respondent has chosen a course of lying and deceit to claw her way out of poverty and the plight of the disadvantaged. She appears to be exceedingly bright but has unfortunately used her mental abilities in criminal ways to advance her career. When faced with bankruptcy and the loss of credit, she chose to falsify applications to obtain a new identity for a new social security card and new credit cards. In August, 1984, when she was 30 years of age, she pled guilty to two counts of deception as to her credit history on her application for credit cards from a department store and bank in the state of Georgia. She also used the false social security card. She was convicted and sentenced to concurrent terms of probation for three years.

In September, 1984, she entered the University of Missouri, Columbia School of Law. She gained admission by falsifying her application for admission in lying about her federal convictions. In her second year at school, she applied to participate in a clinical program which required admission to the Missouri bar. The application was denied because she had revealed her criminal record and she was deemed morally unfit.

She also falsified her application for employment to obtain a job with the Southern Bell Telephone Company. In 1988, she applied for admission to practice law in Pennsylvania. Question 14(b) of the application asked: "Have you ever been arrested or prosecuted for any crime (other than a summary motor vehicle violation)?" She answered, "No." In subsequent letters to the Board of Law Examiners she also did not reveal her criminal record. Her failure to answer completely and properly was rewarded with admission to our Bar.

When these falsehoods were brought to light in February, 1990, proceedings were instituted in her case in August of that year. The record indicates that while she regrets her conduct, she does not admit to intentional conduct. Rather, she blames others for giving her misleading information. Her explanation is that she was told repeatedly that conviction did not arise until a sentence was imposed and that she had been told incorrectly that she fell under the Youthful Offenders Act which would expunge her record after serving probation. As bright and knowledgeable as she is, it defies logic to accept that she relied on this information. Her criminal and other errant conduct was committed with full awareness and appreciation of its wrongness.

As to her personal background, which has been put at issue in his case, she was the product of an admittedly horrible past. Raised in East Harlem project homes by a single parent, she herself became an unwed teenage mother. She subsequently graduated from the University of Pennsylvania, worked in a bank, and married a drug addict who abused her. She also had another child who was autistic with hydrocephalus. Upon admission to Pennsylvania, she worked for the District Attorney in Philadelphia until she was terminated in February, 1990, when it was learned that she had a criminal record. She has been a criminal defense attorney since that time. She has worked with indigent clients, has no other record of discipline, and has never been sued in malpractice. Her academic record is excellent.

I entertain no doubts that Deborah Griffin is a remarkable woman who, under other circumstances, would be an asset to the legal profession. Her personal background, nevertheless, is not the issue here. The sole question for this Court concerns her misconduct.

In contemplating punishment, the Disciplinary Board concluded that a public censure would suffice because:

Respondent brings a unique perspective to the practice of law, based on her past history as an impoverished minority, abused wife, and mother of a handicapped child. As Re-

spondent herself pointed out, she is one of a handful of female attorneys whose practice emphasizes criminal defense work.

Perhaps such views speak more to the issue of standards being employed currently by the Board. If that is true, then more is the pity for the public and more is the danger to the legal profession.

We are governed by laws, and I know of no precedent that would direct us to excuse acts of moral turpitude on these bases. On the contrary, we are directed to withdraw our endorsement of an attorney through admission whenever that attorney is no longer worthy of confidence because of such conduct. *Office of Disciplinary Counsel v. Simon,* 510 Pa. 312, 507 A.2d 1215 (1986), (defining moral turpitude as "anything done knowingly, contrary to justice, honesty, principle, or good morals"). "Furthermore, the race of an attorney can have absolutely no bearing on the appropriate punishment for professional misconduct." *Office of Disciplinary Counsel v. Grigsby,* 493 Pa. 194, 425 A.2d 730, 733 (1981), (Grigsby, an African–American, was disbarred for giving false information on an application for a driver's license).

Here, the fact is that one state, Missouri, would not admit her because of her conviction. Had we had knowledge of her record, she might not have been allowed to practice in Pennsylvania in the first place, in the absence of explanation, and I am convinced that we should return to that starting point, even considering the Hearing Committee's recommendation of a suspension for three years.

The method of accomplishing that purpose is to issue a Rule to Show Cause in order to have Deborah Griffin explain to this Court the reasons for her conduct and why she should be allowed to practice here. The Commonwealth should be made whole by reverting our consideration to the point of admission. I view fraud in the admission procedure as equal to fraud on the Court in that all subsequent activities must be tainted and invalid.