**In re Anonymous No. 7 D.B. 94**

Disciplinary Board Docket no. 7 D.B. 94.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

WITHEREL, *Member,* May 23, 1995—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

A petition for discipline in this matter was filed on January 14, 1994.

On March 30, 1994, respondent filed an answer to the petition for discipline.

On April 6, 1994, the matter was referred to Hearing Committee [    ] consisting of [    ], Esquire, Chairperson, [    ], Esquire, member, and [    ], Esquire, member.

A hearing was held on May 20, 1994.

Petitioner filed a brief with the Hearing Committee on July 12, 1994, and respondent filed his brief with the Hearing Committee on August 1, 1994.

On December 19, 1994 the Hearing Committee filed a report, which recommended a one year suspension.

On January 19, 1995 respondent filed a brief on exceptions. Petitioner filed a brief opposing exceptions on February 1, 1995.

The matter was adjudicated at the February 24, 1995 meeting of the Disciplinary Board.

## II. FINDINGS OF FACT

(1) Petitioner, whose principal office is located at Suite 400, Union Trust Building, 501 Grant Street, Pittsburgh, Pennsylvania, is invested, pursuant to Rule 207, Pa.R.D.E., with the power to investigate all matters involving alleged misconduct of an attorney admitted to practice law in Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the aforesaid rules.

(2) Respondent, [     ], was born on March 27, 1959 and was admitted to practice law in the Commonwealth of Pennsylvania on or about September 20, 1989. His attorney registration address is listed as [     ]. Respondent is subject to disciplinary jurisdiction of the Disciplinary Board of the Supreme Court.

(3) In April, 1979, respondent was convicted of misdemeanor shoplifting, as a result of which he received a suspended sentence and was placed on probation for 24 months.

(4) In or about December 1988, respondent filed a sworn application for admission to the Bar of the Commonwealth of Pennsylvania.

(5) In or about December 1988, respondent applied for admission to the Bar of the State of New Jersey, and on May 5, 1989, he submitted a certified statement of candidate to the committee on character of that bar.

(6) On five occasions between April 1, 1987, and December 14, 1989, respondent applied for admission to the Bar of the State of California.

(7) All of the applications ask whether the applicant has ever been arrested or prosecuted for any crime (other than a summary motor vehicle violation).

(8) The applications of the Bars of the Commonwealth of Pennsylvania and the State of New Jersey specify that the entry of an expungement order does not relieve the applicant of the duty to disclose criminal arrests/prosecutions.

(9) In each application, respondent replied in the negative.

(10) All of the applications ask whether the applicant has ever been the subject of academic discipline.

(11) Respondent answered in the negative to each of these questions.

(12) Respondent's record of military service includes a document which states that in 1981 or 1982, he was disenrolled from the Navy's [A] School because he was accused of cheating on an examination. (Exh. P-9 (sixth sheet).)

(13) On June 1, 1989, respondent was admitted to the Bar of the State of New Jersey. (Stip. 12.)

(14) On September 20, 1989, respondent was admitted to the Bar of the Commonwealth of Pennsylvania. (Stip. 13.)

(15) Respondent passed the February 1990 California Bar examination. (Stip. 14.)

(16) In August 1991, the subcommittee on moral character of the committee of the bar examiners of the State Bar of California met with respondent concerning issues relating to his admission. (Stip. 15.)

(17) The issues initially identified by the California Bar Examiners as raising questions as to respondent's fitness were:

"(a) That the applicant wrongfully failed to disclose his 1979 shoplifting conviction in his application for admission to the bar.

"(b) That disciplinary action was taken against the applicant at the [A] for cheating on an examination.

"(c) That the application wrongfully failed to disclose the disciplinary action set forth in subpara. 17b.

"(d) That the applicant wrongfully failed to provide complete information as requested by the committee of bar examiners regarding his employment history.

"(e) That the applicant failed to cooperate with the committee of bar examiners by refusing to execute a waiver allowing the committee to obtain copies of his pre-employment records from the Central Intelligence Agency." (Stip. 17; exh. P-10.)

(18) The issues initially listed did not include reference to the unauthorized practice of law.

(19) Despite notice of the concerns of the California Bar relating to those issues, respondent failed to take prompt action to correct the errors and omissions in his New Jersey and Pennsylvania applications.

(20) In February 1992, the California Office of Trial Counsel was permitted to amend its notice of hearing to include additional matters, including respondent's alleged representation of himself as an attorney and unauthorized practice of law while employed as a law clerk; respondent declined the opportunity to have the trial continued.

(21) In September 1991, the committee of bar examiners declined to recommend respondent's admission to the California Bar.

(22) The reasons supporting the decision of the committee that respondent lacked sufficient moral character included, inter alia:

"(a) His failure to disclose his shoplifting conviction to the California Committee of Bar Examiners was not an act of moral turpitude because of his belief that he was exempt from disclosing it.

"(b) His failures to disclose the conviction to the New Jersey Committee on Character and to the Pennsylvania Board of Law Examiners are inexcusable, material omissions and are acts involving moral turpitude.

"(c) His cheating on an examination at the Navy's [A] School is a dishonest act involving moral turpitude.

"(d) His failure to disclose the disenrollment to the California Committee is an act of moral turpitude.

"(e) His distribution of business cards stating that he is an attorney at law, participation in a court status conference and numerous oral depositions are acts in the nature of the unauthorized practice of law, an act which involves moral turpitude, but there was no resultant harm.

"(f) His character witnesses were not aware of all his past bad acts."

(23) Respondent wrote to the Pennsylvania Board of Law Examiners and New Jersey Committee on Character by letters dated March 2, 1992, in which he notified them of his criminal record, the California proceedings and the grounds therefor relating to his criminal conviction, but did not mention the other charges against him.

(24) On April 14, 1992, the state bar court denied respondent's certification for admission to the California Bar.

(25) In denying the certification the state bar court found that respondent had engaged in the unauthorized practice of law in California, and that finding constitutes a determination binding on respondent that he:

"(a) held himself out as an attorney to members of the bar and lay people;

"(b) passed out business cards stating that he was an attorney at law;

"(c) appeared and acted as counsel at defending depositions;

"(d) negotiated and corresponded with attorneys concerning both procedural and substantive legal issues;

"(e) used attorney [B's] letterhead without identifying his status as a law clerk; and

"(f) failed to advise other counsel that he was not admitted when they wrote letters addressed to him as '[respondent], Esquire' and otherwise identifying him as an attorney." (Exh. P-12.)

(26) In litigation captioned [C] v. [D], between April 1988 and March 1989, respondent:

"(a) was shown as counsel of record at a mandatory status conference;

"(b) participated in a deposition;

"(c) received letters addressed to him as '[respondent], Esquire';

"(d) wrote letters, some of which were to the senders of the aforesaid letters, using law firm letterhead, in which he did not identify himself as a paralegal or notify senders of the error in their previous characterization of him." (Exh. P-12.)

(27) In the [C] litigation, respondent's firm took the position that the fact that respondent was a law clerk and not an admitted attorney had been fully disclosed to other counsel.

(28) In the [C] litigation, respondent's explanation that on the date his name appeared as counsel of record at a mandatory status conference, he merely advised the clerk that the attorney for whom he worked would be late, and, in fact, the attorney appeared and participated, is supported by the attorney involved; therefore, this aspect of respondent's unauthorized practice is unsubstantiated.

(29) In litigation captioned [E] v. [F], in October and November 1989, respondent participated in eight depositions, in many instances in the absence of the attorney for whom he worked, by defending the depositions and asking and objecting to questions and engaged in negotiations relating to scheduling.

(30) The finding of the California Bar court that respondent cheated in and was disenrolled from the [A] School, and that he was aware of the Navy's determination in that regard is brought into serious question by the evidence.

(31) Since the denial of his admission to the California Bar, respondent has engaged in rehabilitation in the form of pro bono work.

(32) Several attorneys familiar with respondent submitted statements testifying to his moral character.

## III. CONCLUSIONS OF LAW

Respondent's conduct has violated the following Rules of Professional Conduct:

(A) R.P.C. 5.5(b)—(Which states that it is professional misconduct for a lawyer to practice law in a jurisdiction where to do so would be in violation of regulations of the profession in that jurisdiction).

(B) R.P.C. 8.1(a)—(Which states that a lawyer is subject to discipline if the lawyer has made a materially false

statement in, or if the lawyer has deliberately failed to disclose a material fact requested in connection with, the lawyer's application for admission to the bar or any disciplinary matter).

(C) R.P.C. 8.4(c)—(Which states that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation).

(D) R.P.C. 8.4(d)—(Which states that it is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice).

## IV. DISCUSSION

The record in this case indicates that the respondent has already appeared before the state bar court of the State Bar of California on charges similar to those at issue in this case. Petitioner relies on records from that proceeding, other exhibits, and a stipulation regarding the issues. These issues cover two basic types of misconduct: first, whether or not respondent should be disciplined for making a material misstatement of fact on his application for admission to the bar by failing to note a conviction and subsequent probation for a shoplifting incident; and second, whether respondent engaged in the unauthorized practice of law while employed as a law clerk by an attorney in California. (The board concurs with the Hearing Committee's conclusion in this case that a charge concerning whether academic discipline was imposed, constituting another misstatement on the bar application, was not sufficiently proven.)

Respondent's agreement to a stipulation regarding the application and his testimony before the Hearing Committee, makes further discussion of this issue unnecessary, the violation being admitted and no defense presented.

Respondent also agreed that he was bound by the determination of the state bar court in the California proceeding that he engaged in the unauthorized practice of law.

Therefore the major issue remaining is the consideration of the proper type of discipline to be imposed. Most of the evidence presented by respondent concerned mitigation. With regard to the bar application misstatement, respondent represented that he has always answered any question regarding arrest or conviction negatively, based on statements made by his parole officer that the record would be expunged.

Throughout the proceedings, respondent consistently showed remorse over his decisions and indicated an understanding of his continuing responsibilities as a lawyer. Furthermore, respondent testified that he has engaged in a significant amount of community involvement and pro bono work at the suggestion of the California State Bar court. (N.T. 61.)

However, in examining this case it is important to keep in mind the importance of truthfulness to the profession's responsibilities to the public. In considering the import of violations involving dishonesty, the Pennsylvania Supreme Court has said, "[t]ruth is the cornerstone of the judicial system; a license to practice law requires allegiance and fidelity to truth." *Office of Disciplinary Counsel v. Grigsby,* 493 Pa. 194, 200, 425 A.2d 730, 733 (1981). Petitioner identified in its brief opposing exceptions to the board several similar cases. Closest in circumstance to the present case is *Office of Disciplinary Counsel v. Griffin,* 535 Pa. 590, 637 A.2d 266 (1994). In this case, an attorney was suspended for two years through the concealment of previous convictions for federal offenses. Griffin testified that she relied on the statements of others in

leaving the convictions off the application. (*Id.;* facts from dissenting opinion.)

A second case also cited by petitioner is *Office of Disciplinary Counsel v. Ragbirsingh,* 535 Pa. 587, 637 A.2d 265 (1994) . While this case also involved falsehood in the bar application process (for the New Jersey Bar), the conduct was far more outrageous, consisting of fraudulent letters of recommendation, apparently contrived by the respondent himself. There was further evidence that the respondent had submitted a fraudulent resume as well. The Pennsylvania Supreme Court imposed a three-year suspension. (*Id.;* facts from dissenting opinion.)

These cases do suggest that public discipline is appropriate in cases involving dishonesty in bar applications. In addition, while it appears that respondent in this case was not intentionally engaged in the unauthorized practice of law, the unauthorized practice of law by a Pennsylvania attorney in a jurisdiction where he or she is not admitted is a clear violation of the Pennsylvania Rules of Professional Conduct, R.P.C. 5.5(b) and *Cf. In re Anonymous No. 78 D.B. 84,* 39 D.&C.3d 131 (1986) (attorney engaged in the unauthorized practice of law when representing clients while on inactive status).

In conclusion, the board has determined that persons in these circumstances should have to prove their fitness to practice law by the reapplication procedure in the Rules of Disciplinary Enforcement.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends to your honorable court that respondent, [    ], be suspended from the practice of law for one year and one day.

It is further recommended that the court direct that respondent pay all of the necessary expenses incurred in the investigation and processing of this matter pursuant to Rule 208(g) of the Pennsylvania Rules of Disciplinary Enforcement.

Board members Carson and Kerns did not participate in the adjudication of this matter.

### ORDER

And now, June 19, 1995, upon consideration of the report and recommendations of the Disciplinary Board dated May 23, 1995, it is hereby ordered that [respondent] be and he is suspended from the bar of this Commonwealth for a period of three years and he shall comply with all the provisions of Rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

Mr. Justice Montemuro is sitting by designation.

Mr. Justice Castille dissents and would enter an order suspending respondent for a period of one year.