**Office of Disciplinary Counsel v. Silver**

Disciplinary Board Docket no. 56 D.B., 178 D.B. 2003.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

GEPHART, *Member*, January 7, 2005—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

On April 29, 2003, a petition for discipline at no. 56 D.B. 2003 was filed by Office of Disciplinary Counsel against respondent, Gary Scott Silver. The petition charged respondent with commingling non-fiduciary funds with funds in his law firm's trust account, failing to hold client funds inviolate, failing to maintain complete records of client and third-party funds for a period of five years after termination of representation, and fail-

ing to promptly deliver to his client the funds he was entitled to receive.

On November 20, 2003, a petition for discipline at no. 178 D.B. 2003 was filed against respondent charging him with sending an ex parte communication to a court of common pleas judge, and failing to comply with three orders issued by the same judge.

Respondent filed an answer to petition for discipline at no. 178 D.B. 2003 on December 11, 2003. By Disciplinary Board order of January 29, 2004, the petitions for discipline were consolidated for hearing before Hearing Committee 1.19.

A disciplinary hearing was held on May 5, 2004, before Hearing Committee 1.19 comprised of Chair John Edward Quinn, Esquire and Members Edward C. Toole Jr., Esquire, and Steven M. Steingard, Esquire. Respondent was represented by Samuel C. Stretton, Esquire. At the hearing, Disciplinary Counsel withdrew charges in petition 56 D.B. 2003 relating to alleged violations by respondent of R.P.C. 1.4(a) and 1.5(c). Subsequently, in its brief to the Hearing Committee, Disciplinary Counsel concluded that respondent did not violate R.P.C. 8.4(c).

Following the submission of briefs by the parties, the Hearing Committee filed a report on October 13, 2004, finding that respondent committed violations of the Rules of Professional Conduct and recommending that respondent receive a public censure with 12 months of probation.

This matter was adjudicated by the Disciplinary Board at the meeting of November 17, 2004.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner, whose principal office is located at Suite 1400, 200 North Third Street, Harrisburg, Pennsylvania, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of said rules.

(2) Respondent, Gary Scott Silver, was born in 1961 and was admitted to practice law in the Commonwealth of Pennsylvania in 1991. His office is located at 2000 Market Street, Suite 2925, Philadelphia, PA 19103.

(3) Respondent is subject to the disciplinary jurisdiction of the Disciplinary Board of the Supreme Court of Pennsylvania.

(4) Respondent has a prior record of discipline consisting of two informal admonitions administered in 2001, and a private reprimand administered in 2002.

(5) At all times relevant, the former law firm of Silver & DiVergilis had a trust account titled "Silver DiVergilis & Marrone attorney trust account" maintained at CoreStates Bank. Respondent was the attorney bearing the primary responsibility for handling the trust account for the firm.

(6) Respondent made the following deposits of cash or checks into the trust account:

(a) On October 13, 1998, respondent deposited three checks issued by the City of Philadelphia in the amounts of $400, $400 and $500, made payable to James DiVergilis;

(b) On October 7, 1998, respondent deposited a check for $2,471.30 made payable to him for work he performed for Michael Forbes, Esquire;

(c) On December 8, 1998, respondent deposited a check for $2,748.35 made payable to him for additional work he performed for Mr. Forbes;

(d) On December 18, 1998, respondent deposited $700 in cash;

(e) On January 12, 1999, respondent deposited a check for $404.29 issued by the Department of the Treasury, State of New Jersey, and made payable to: James J. DiVergilis, Esq.

(7) On September 1, 1998, respondent deposited $23,918.56 into the trust account, $22,432.56 of which was entrusted to him on behalf of Nicholas Fiolo Sr., Nicholas Fiolo Jr., and Michael Fiolo.

(8) On September 29, 1998, respondent issued three checks each in the amount of $7,477.52, made payable respectively to Nicholas Fiolo Sr., Nicholas Fiolo Jr., and Michael Fiolo.

(9) The checks respondent issued to Nicholas Fiolo Jr. and Michael Fiolo were negotiated in early October 1998.

(10) On December 29, 1998, Nicholas Fiolo Sr., presented the check for deposit and the deposit was returned because of insufficient funds.

(11) On December 29, 1998, First Union sent a dishonored check notice for the check to the Lawyers Fund for Client Security, which advised that an overdraft had occurred in the trust account.

(12) By letter to respondent dated January 12, 1999, Kathryn J. Pifer, the executive director of the fund:

(a) Enclosed a copy of the dishonored check notice;

(b) requested from respondent, within seven business days of receipt of the letter, a written documented explanation as to why the overdraft had occurred;

(c) stated that in the event the overdraft was caused solely by bank error, respondent was required to submit a written acknowledgment from the bank specifying the nature of the error;

(d) requested, in the event the overdraft was not caused solely by bank error, that his response show the number, date, amount, payee, client name, maker of each check and a copy of the client ledger sheet for each client matter;

(e) requested a copy of his monthly trust account bank statements for the last three months;

(f) requested, in the event that funds had been deposited or transferred to cover the overdraft, that he provide a copy of the dated deposit slip, credit memo or bank statement, together with a full description of the funds comprising that deposit;

(g) stated that if funds had not been deposited or transferred to cover the overdraft, an explanation would be necessary; and

(h) informed respondent that if he failed to timely respond to her letter or his explanation was determined by the fund to be unsatisfactory, the matter would be referred to the Disciplinary Board.

(13) Respondent received this letter.

(14) On January 21, 1999, respondent telephoned the fund and advised that the fund would receive his response no later than January 29, 1999.

(15) By certified letter dated February 3, 1999, received by respondent on February 5, 1999, Ms. Pifer advised respondent that the matter was being referred to the Office of Disciplinary Counsel because respondent had not submitted a response by January 29, 1999.

(16) From approximately September 8, 1998 through October 7, 1998, and on December 3, 1998, respondent failed to maintain sufficient funds in the trust account equal to the amount of funds he was required to maintain on behalf of Nicholas Fiolo Sr.

(17) From December 22, 1998 until January 1999, when the trust account was no longer actively used as a fiduciary account, respondent failed to maintain sufficient funds in the trust account equal to the amount of funds he was required to maintain on behalf of Mr. Fiolo.

(18) In March 1999, respondent paid Nicholas Fiolo Sr. $7,477.52 by issuing to him a new check drawn on a different trust account with CoreStates Bank.

(19) Respondent didn't maintain complete records pertaining to the client and third-party funds that were handled through the trust account for five years after the representations were terminated.

(20) On July 13, 2001, James DiVergilis, Esquire, through his counsel, commenced a civil action against respondent in the Philadelphia Court of Common Pleas.

(21) On the date the complaint was filed, Mr. DiVergilis also filed a petition for preliminary injunction, seeking to compel respondent to complete various actions necessary to complete the dissolution of the law partnership. These actions included providing access to the partnership books, bank statements and business accounts, paying back taxes and filing tax returns, closing bank accounts, and paying certain bills of the partnership.

(22) A preliminary injunction hearing was held on August 1, 2001, before the Honorable John W. Herron. A partial settlement was reached.

(23) Respondent agreed to do certain things within 10 days of the stipulated order, including signing the partnership dissolution document and providing Mr. DiVergilis with all books and records of the partnership within respondent's custody or control.

(24) On August 12, 2001, Mr. DiVergilis filed a petition for contempt asserting that the only action respondent had taken to comply with the stipulated order was to sign the dissolution agreement and to provide a cashier's check in the amount of $8,889 to Mr. DiVergilis.

(25) On September 21, 2001, Judge Herron issued a rule to show cause and scheduled a hearing on the contempt petition for October 29, 2001.

(26) The October 29, 2001 hearing was rescheduled for November 5, 2001.

(27) On November 5, 2001, 30 minutes prior to the start of the hearing, respondent sent an ex parte hand-written facsimile to Judge Herron, in which respondent requested that the hearing be rescheduled to November 13, 2001.

(28) Judge Herron denied respondent's request as untimely and an ex parte communication.

(29) On November 6 and 7, 2001, a hearing on the contempt petition was held during which respondent was present and offered evidence.

(30) By interim order dated November 8, 2001, Judge Herron found respondent in contempt of the August 1, 2001 stipulated order. Judge Herron ordered respondent to pay attorney's fees in the amount of $5,125 within 30 days and directed respondent and Mr. DiVergilis to file proposed findings of fact and conclusions of law by December 7, 2001, and a reply brief by December 14, 2001.

(31) Respondent did not file any proposed findings of fact and conclusions of law or a reply brief.

(32) On December 10, 2001, respondent filed an appeal from the interim order with the Superior Court of Pennsylvania.

(33) On the same date, Mr. DiVergilis filed a second petition for contempt relating to the interim order, but his matter remained deferred while respondent's appeal was pending.

(34) On December 18, 2001, Judge Herron issued an order directing respondent to file a concise statement of

the matters complained of on appeal within 14 days. Respondent failed to comply with this order.

(35) On January 4, 2002, Mr. DiVergilis filed a motion to quash the appeal.

(36) On February 14, 2002, the Superior Court of Pennsylvania granted the motion and dismissed the appeal.

(37) On February 25, 2002, Judge Herron issued a rule returnable on Mr. DiVergilis' second contempt petition with a hearing to be held on March 21, 2002.

(38) On March 6, 2002, Mr. DiVergilis filed an amended petition for contempt.

(39) At Mr. DiVergilis' request, the March 21, 2002 hearing was rescheduled for March 26, 2002.

(40) On March 25, 2002, respondent sent a letter by facsimile transmission requesting that Judge Herron continue the March 26, 2002 hearing because respondent would be out of state that day. Respondent also asserted that the amended petition had not been properly served and requested an extension of 20 days to answer the amended complaint.

(41) Judge Herron did not grant respondent's request for a continuance or for an extension to answer the amended petition.

(42) Respondent failed to appear at the March 26, 2002 hearing.

(43) Judge Herron, sua sponte, issued a rule to show cause as to why respondent should not be held in contempt for failing to appear at the March 26, 2002 hearing and as to the amended petition.

(44) The hearing was scheduled for April 25, 2002.

(45) At the April 25, 2002 hearing, the court questioned respondent as to why he did not appear at the March 26, 2002 hearing and respondent answered he was unable to cancel a family commitment in Connecticut.

(46) By opinion dated May 2, 2002, Judge Herron found respondent in contempt due to, inter alia, his failure to comply with the interim order, failure to appear for the March 26, 2002 hearing, and failure to apprise Judge Herron of this family commitment until very late, which resulted in both inexcusable delay of the proceedings and a wasted court hearing.

(47) By order dated May 2, 2002, Judge Herron:

(a) granted Mr. DiVergilis' amended petition;

(b) found respondent in contempt of his November 8, 2001 interim order;

(c) held respondent 50 percent responsible for all taxes paid by Mr. DiVergilis since the partnership dissolution for any tax period during which the partnership operated;

(d) held respondent 100 percent liable for interest and penalties incurred, charged or otherwise assessed against the Silver & DiVergilis partnership by any federal, state or local entity for taxes incurred during, or on behalf of, the partnership;

(e) ordered respondent to reimburse Mr. DiVergilis in the amount of $775 for the filing fee to the register of wills on the Catherine Fiolo file;

(f) held respondent liable for additional IRS 940 and 941 taxes for the years 1997 and 1998 in the amount of $886;

(g) ordered respondent to pay attorney's fees and costs in the amount of $11,506.23;

(h) ordered respondent to satisfy the Comcast Cellular delinquent account;

(i) ordered respondent to pay $1,000 to the office of the prothonotary within 30 days, and;

(j) ordered respondent to pay all other sums set forth in the May 2, 2002 order within 30 days.

(48) Respondent filed an appeal from Judge Herron's May 2, 2002 order with the Superior Court of Pennsylvania.

(49) By order of August 7, 2002, the Superior Court of Pennsylvania dismissed respondent's appeal due to his failure to complete and return a docketing statement within 10 days to the Superior Court prothonotary.

(50) Respondent cooperated with Office of Disciplinary Counsel.

(51) Respondent expressed remorse for his misconduct.

(52) Respondent is currently in compliance with all orders of Judge Herron and has purged himself of all contempt.

(53) Respondent has been a sole practitioner since January 2000.

(54) Respondent's current procedures for handling fiduciary and non-fiduciary funds are in compliance with

the Rules of Professional Conduct, including maintaining sole authority to issue checks, preparing client distribution schedules and retaining an accountant to review his financial records every three months.

(55) Respondent has a computerized calendar in place, which he reconciles with his date book to keep track of appointments, filing deadlines and court appearances.

(56) Respondent acknowledged that his conduct in not complying with Judge Herron's orders and not appearing at hearings was unacceptable and would not be repeated in the future.

(57) Three former clients of respondent testified as to his prompt attention to their matters and his representation of their cases in a timely fashion.

(58) Attorney Wayne Maynard has known respondent for six or seven years and knows of his good reputation in the community as a truthful, honest and law-abiding person.

(59) Attorney Leslie Gerstein, who has represented respondent, knows his reputation in the community as a truthful, honest and law-abiding person to be good.

## III. CONCLUSIONS OF LAW

Respondent violated the following Rules of Professional Conduct with respect to 56 D.B. 2003:

(1) R.P.C. 1.15(a)—A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyers own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office

is situated. Complete records of such account funds and other property shall be preserved for a period of five years after termination of the representation.

(2) R.P.C. 1.15(b)—Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. A lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

Respondent violated the following Rules of Professional Conduct with respect to 178 D.B. 2003:

(1) R.P.C. 3.5(b)—A lawyer shall not communicate ex parte with a judge except as permitted by law.

(2) R.P.C. 8.4(d)—It is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice.

## IV. DISCUSSION

This matter is before the Disciplinary Board on consolidated petitions for discipline. Petitioner and respondent stipulated that respondent violated R.P.C. 1.15(a) and 1.15(b) by commingling non-fiduciary funds with funds held in his law firm's trust account, failing to hold the funds of his client, Nicholas Fiolo Sr., inviolate in his trust account, and failing to maintain complete records of client and third-party funds for a period of five years after the termination of representation and failing to promptly deliver to Mr. Fiolo the funds to which he was entitled. Petitioner and respondent stipulated that during

the course of acrimonious litigation, caused by the breakup of his law firm, respondent violated R.P.C. 3.5(b) by sending an ex parte facsimile transmission to the Honorable Judge John Herron of the Court of Common Pleas of Philadelphia County. Respondent also stipulated to violation of R.P.C. 8.4(d) by failing to comply with three orders issued by Judge Herron and failing to appear at a court hearing, thereby delaying the proceedings and wasting the time of the court. Petitioner's burden of proving ethical misconduct by a preponderance of evidence that is clear and satisfactory has been met. *Office of Disciplinary Counsel v. Grigsby,* 493 Pa. 194, 425 A.2d 730 (1981).

Similar cases of misconduct have been dealt with by either a public censure or short suspension, sometimes in conjunction with probation. *In re Anonymous No. 140 D.B. 1996,* 427 disciplinary docket no. 3 (Pa. June 18, 1998) (public censure); *In re Anonymous No. 131 D.B. 90,* 17 D.&C.4th 170 (1992) (six-month suspension followed by 12-month probation period); *In re Anonymous No. 44 D.B. 87,* 49 D.&C.3d 488 (1988) (one-year suspension).

Careful review of respondent's misconduct and the applicable precedent indicates that public discipline is warranted. Respondent's mishandling of client funds and his contemptuous conduct before Judge Herron are serious acts of misconduct. Respondent's past record of discipline aggravates the instant misconduct. In respondent's favor, the record is clear that he changed his office procedures to conform with the requirements of the Rules of Professional Conduct. He utilizes an accountant to review his escrow and operating accounts.

He set up specific office devices to ensure timely response to client inquiries and attendance at scheduled hearings. These are positive steps and show respondent's interest in avoiding ethical problems in the future. Additionally, respondent ultimately complied with the provisions of Judge Herron's orders and paid all monies pursuant to those orders. Respondent expressed his remorse and understands that his behavior was unacceptable.

For these reasons, the board recommends that respondent be suspended for a period of six months followed by probation with a practice monitor for 12 months.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania unanimously recommends that the respondent, Gary Scott Silver, be suspended from the practice of law for a period of six months, followed by probation for a period of 12 months with a practice monitor, subject to the following conditions:

(1) Respondent shall select a practice monitor subject to the approval of the Office of Disciplinary Counsel.

(2) The practice monitor shall do the following during the period of respondent's probation:

(a) Meet with the respondent, at least monthly, to examine respondent's office and escrow accounts, client ledgers and other financial records to ensure that all such records are being properly maintained and that fiduciary and non-fiduciary funds are being properly segregated, handled and disbursed in accordance with Rule of Professional Conduct 1.15;

(b) Meet with the respondent, at least monthly, to examine respondent's progress towards satisfactory and timely completion of clients' legal matters and regular client contact;

(c) Periodically examine the respondent's law office organization and procedures to ensure that the respondent is maintaining an acceptable tickler system, filing system, and other administrative aspects of the respondent's practice to ensure that scheduled court hearings are attended and filing deadlines are met;

(d) File quarterly written reports on a board-approved form with the secretary of the board; and

(e) Shall immediately report to the secretary any violations of the respondent of the terms and conditions of probation.

It is further recommended that the expenses incurred in the investigation and prosecution of this matter are to be paid by the respondent.

Board Member Nordenberg did not participate in the November 17, 2004 adjudication.

## ORDER

And now, April 6, 2005, upon consideration of the report and recommendations of the Disciplinary Board dated January 7, 2005, the petition for review and request for oral argument, the request for oral argument is denied and it is hereby ordered that Gary Scott Silver be suspended from the bar of this Commonwealth for a period of six months, to be followed by probation for a period of 12 months, subject to the following conditions:

(1) Respondent shall select a practice monitor subject to the approval of the Office of Disciplinary Counsel.

(2) The practice monitor shall do the following during the period of respondent's probation:

(a) Meet with the respondent, at least monthly, to examine respondent's office and escrow accounts, client ledgers and other financial records to ensure that all such records are being properly maintained and that fiduciary and non-fiduciary funds are being properly segregated, handled and disbursed in accordance with Rule of Professional Conduct 1.15;

(b) Meet with the respondent, at least monthly, to examine respondent's progress towards satisfactory and timely completion of clients' legal matters and regular client contact;

(c) Periodically examine the respondent's law office organization and procedures to ensure that the respondent is maintaining an acceptable tickler system, filing system and other administrative aspects of the respondent's practice to ensure that scheduled court hearings are attended and filing deadlines are met;

(d) File quarterly written reports on a board-approved form with the secretary of the board; and

(e) Shall immediately report to the secretary any violations of the respondent of the terms and conditions of probation.

It is further ordered that respondent shall comply with all of the provisions of Rule 217, Pa.R.D.E. and shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.