# Office of Disciplinary Counsel v. Luongo

Disciplinary Board Docket No. 202 DB 2008.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

JEFFERIES, *Member*, June 1, 2010—Pursuant to rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania ("board") herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

On December 31, 2008, Office of Disciplinary Counsel filed a petition for discipline at No. 202 DB 2008 against Michael Romeo Luongo, respondent. The petition charged Respondent with violations of the rules of Professional Conduct as a result of respondent's failure to return or maintain funds he had received from Wachovia Bank, as garnishee, in a civil litigation. Respondent filed an answer to petition on April 13, 2009.

On May 18, 2009, Office of Disciplinary Counsel filed a Petition for Discipline at No. 75 DB 2009 against

respondent. The petition charged respondent with violations of the rules of professional conduct arising out of respondent's fabrication of a Bankruptcy Court order. Petitioner filed a motion to consolidate petitions for Discipline with the Disciplinary Board, which was granted by Board Order of July 9, 2009. Respondent filed an answer to petition for discipline at 75 DB 2009 on July 10, 2009.

A disciplinary hearing was held on September 16, 2009, before a District I Hearing Committee comprised of Chair Thomas M. Gallagher, Esquire, and Members Richard P. Haaz, Esquire, and Meredith S. Auten, Esquire. Respondent did not appear.

Respondent filed a petition for review with the Supreme Court on September 28, 2009. The subject matter of the petition was the Hearing Committee's denial of motions made by respondent. Petitioner filed a motion to strike petition for review and quash appeal on October 8, 2009. By order of the Supreme Court dated December 1, 2009, the petition for review was struck and the appeal quashed.

The Hearing Committee filed a report on January 21, 2010, concluding that respondent violated the rules as charged in the petitions for discipline and recommending that respondent be disbarred from the practice of law.

No Briefs on Exception were filed by the parties.

This matter was adjudicated by the Disciplinary Board at the meeting on April 14, 2010.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

1. Petitioner, Office of Disciplinary Counsel, whose principal office is located at Pennsylvania Judicial Center, 601 Commonwealth Ave., Suite 2700, P.O. Box 62485, Harrisburg, Pennsylvania 17106, is invested, pursuant to Pa.R.D.E. 207, with the power and the duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of said rules of Disciplinary Enforcement.

2. Respondent is Michael Romeo Luongo. He was admitted to practice law in the Commonwealth of Pennsylvania in 1991. Respondent's registered office address is Suite 1108, 235 Chestnut Street, Philadelphia, PA 19106. Respondent is subject to the jurisdiction of the Disciplinary Board of the Supreme Court of Pennsylvania.

3. Respondent has no history of discipline.

*The Wachovia Funds Matter*

4. On the 2006-2007 Pennsylvania Attorney's Annual Fee Form, respondent identified a PNC Bank account as an IOLTA account in which he maintained funds of clients or third persons on May 1, 2006 or at any time after May 1, 2005 subject to rule 1.15 of the Rules of Professional Conduct.

5. In Section D of the 2006 Form, respondent certified that he was familiar and in compliance with RPC 1.15.

Respondent signed and dated the 2006 Form on May 19, 2006.

6. On the 2007-2008 Pennsylvania Attorney's Annual Fee Form, respondent identified a TD Banknorth account as an IOLTA account in which respondent maintained funds of clients or third persons on May 1, 2007 or at any time after May 1, 2006 subject to RPC 1.15.

7. In section D of the 2007 Form, respondent certified that he was familiar and in compliance with RPC 1.15. Respondent signed and dated the 2007 Form on May 21, 2007.

8. Respondent instituted a civil suit in the Philadelphia Court of Common Pleas captioned *Virginia Baltzell and Sylvia Luongo v. Matthew Barnett.*

9. On or about January 21, 2003, respondent filed a Praecipe for Writ of Attachment against Garnishee, Gloria Levin Barnett, and Interrogatories in Attachment.

10. On or about May 6, 2003, respondent filed a Petition for Assessment of Damages against Barnett in the Philadelphia action.

11. On August 7, 2003, the Honorable Esther Sylvester entered judgment and assessed damages based upon the petition in favor of plaintiffs and against Barnett in the total amount of $108,430.

12. On August 20, 2004, the judgment entered in the action in Philadelphia was transferred to Montgomery County.

13. On January 4, 2005, Howard Maniloff, Esquire, counsel for Barnett, filed an appeal to the Superior Court,

following the denial of a Motion to Strike, which he filed on behalf of Barnett in the Philadelphia action.

14. On April 20, 2005, respondent filed a Praecipe for Writ of Execution and Interrogatories in Attachment against Wachovia, as garnishee. This was filed in the Montgomery County Court of Common Pleas under caption of *Virginia Baltzell and Sylvia Luongo v. Matthew Barnett and Gloria Barnett.*

15. On May 19, 2005, judgment was entered against Wachovia in the amount of $119,507.

16. On June 6, 2005, Mr. Maniloff filed with the Superior Court an emergency motion to stay execution/distribution and to deposit funds with the court pending appeal.

17. On June 8, 2005, respondent filed an answer to the application for stay.

18. On June 8, 2005, Wachovia issued the Wachovia Funds check in the amount of $119,507 payable to "Virginia Baltzell, Sylvia Luongo & their attorney Michael Luongo."

19. On June 9, 2005, the Superior Court issued an order, which granted the emergency motion to stay execution/distribution conditioned upon the trial court's determination of the amount of security to be posted by appellant.

20. On June 9, 2005, Mr. Maniloff notified respondent of the June 9, 2005 order, by sending a copy to respondent by facsimile.

21. On June 9, 2005, Mr. Maniloff received a confirmation that the facsimile had been received by

respondent's machine.

22. On June 10, 2005, Mr. Maniloff discovered that Wachovia had released the check to respondent and, consequently, Mr. Maniloff filed with the Superior Court an application for emergency enforcement to enforce stay of execution/distribution.

23. On June 10, 2005, the Superior Court issued an order granting the emergency motion to enforce the June 9, 2005 Order.

24. The June 10, 2005 order specifically stated that "[respondent] is directed to immediately return the disputed funds ($119,507.00) to Wachovia Bank, N.A..."

25. On June 10, 2005, Mr. Maniloff notified respondent of the June 10 order by sending a copy of the order to respondent by facsimile.

26. On June 10, 2005, respondent deposited the Wachovia Funds in PNC.

27. On June 10, 2005, respondent knew of the June 10, 2005 order of the Superior Court.

28. On June 13, 2005, respondent acknowledged receipt of the June 10, 2005 order.

29. On June 17, 2005, Mr. Maniloff filed with the Prothonotary of the Montgomery County Court of Common Pleas, certified funds from Wachovia Bank in the amount of $143,408.40 as required by the June 10, 2005 order.

30. On June 17, 2005, Mr. Maniloff filed with the Superior Court an "emergency motion of appellant Gloria

Levin Barnett to hold Michael R. Luongo in civil contempt for violation of court order."

31. By order of June 24, 2005, the Superior Court: 1) remanded the matter and directed the trial court to hold a contempt hearing to determine the issues in the June 17, 2005 Motion for Civil Contempt; 2) directed the trial court to determine whether the matter should be referred to the disciplinary board; and 3) retained jurisdiction.

32. Pursuant to the June 24, 2005 order, Judge Sylvester scheduled the contempt hearing for July 19, 2005 and July 20, 2005.

33. On July 20, 2005, respondent appeared and presented the testimony of Michael O. Krause, his law clerk and legal assistant.

34. Mr. Krause testified that on June 9, 2005, he obtained the Wachovia Funds from the law office of Jon Sirlin, Esquire; he proceeded to PNC Bank where he met respondent; respondent made out a deposit slip and placed the slip and Wachovia Funds in an "express deposit box"; the June 10, 2005 order was received via facsimile in respondent's office; and he notified respondent of the receipt of the order.

35. Respondent was scheduled to testify on July 20, 2005 after the luncheon break but failed to return to the courtroom.

36. Respondent did not contact Judge Sylvester.

37. On July 21, 2005, respondent filed with the Superior Court an Emergency Motion for Leave to File a response in opposition to appellant's Motion for Civil Contempt.

38. On August 5, 2005, respondent filed in the Superior Court motions for sanctions against Wachovia; Wachovia's attorney, Mr. Sirlin; appellant Barnett, and appellant's attorney, Mr. Maniloff.

39. By Order of August 19, 2005, the Superior Court remanded the matter to the trial court for 45 days to complete the trial court's hearings in compliance with the June 24, 2005 order as well as to consider motions for sanctions filed by respondent and responses thereto.

40. On September 15, 2005, respondent filed a second Praecipe for Writ of Execution against Wachovia, as garnishee, despite the fact that a stay had been ordered by the Superior Court.

41. Pursuant to the Superior Court's Order of August 19, 2005, Judge Sylvester scheduled a hearing for October 6, 2005.

42. By letter dated October 4, 2005, directed to Judge Sylvester, respondent acknowledged that he was notified of the date of the hearing.

43. Respondent failed to appear at the October 6, 2005 hearing before Judge Sylvester.

44. On October 6, 2005, Judge Sylvester entered an order granting Mr. Sirlin's request for sanctions against respondent in the amount of $5,000.

45. On October 17, 2005, as a direct result of respondent filing the second Praecipe for Writ of Execution against Wachovia, Mr. Maniloff filed a second emergency petition to stay execution and to hold respondent in civil contempt for violation of the June 9, 2005 order and June 10, 2005

order.

46. By order dated October 21, 2005, the Superior Court granted Mr. Maniloff's second emergency petition and further remanded the matter to the trial court to determine: 1) the contempt motion; 2) the imposition of sanctions; and 3) whether respondent should be referred to the Disciplinary Board.

47. On October 24, 2005, Judge Sylvester filed a recommendation to Superior Court, in which she recommended that respondent return the $119,507 to Wachovia Bank within ten days of date of order; and the matter be referred to the Disciplinary Board.

48. On October 29, 2005, respondent filed a Praecipe to Withdraw the Writ of Execution, which had been filed on September 15, 2005, with the Montgomery County Prothonotary's Office.

49. On November 4, 2005, Mr. Sirlin had judgment entered on Judge Sylvester's October 6, 2005 order granting sanctions.

50. On November 28, 2005, respondent filed an appeal from the November 4, 2005 order of Judgment to the Pennsylvania Superior Court.

51. On October 4, 2006, the Superior Court reversed and remanded the matter to the trial court with instructions.

52. On November 3, 2006, Mr. Maniloff filed in the Superior Court an application for Enforcement of the June 10, 2005 order.

53. On November 15, 2006, the Superior Court entered

an order referring the matter to the trial court for review and enforcement of the trial court's previous directive issued against respondent.

54. By order dated January 17, 2007, Judge Sylvester directed respondent to personally appear on January 25, 2007 to return to Barnett the sum of $119,507.

55. The January 17, 2007 order was timely served on respondent.

56. Respondent failed to appear on January 25, 2007.

57. By order of May 11, 2007, Judge Sylvester: 1) held respondent in civil contempt for his failure to comply with the June 10, 2005 order and for his failure to appear at the January 25, 2007 hearing; 2) issued a bench warrant directing the Sheriff of Philadelphia to bring respondent before Judge Sylvester on May 31, 2007; 3) directed that the court determine at the time of the bench warrant hearing if respondent should be committed to prison until such time as respondent purges himself of the contempt by returning the $119,507 plus paying the computed interest and attorney's fees and costs to Barnett; and 4) directed the Prothonotary to forward a copy of the order to the Disciplinary Board.

58. On May 23, 2007, the May 11, 2007 order was sent to respondent, which he received.

59. On May 30, 2007, the Philadelphia Sheriff's office apprehended respondent on the bench warrant and brought respondent before Judge Sylvester.

60. On May 30, 2007, respondent informed the Judge that he did not have the money stated in the May 11, 2007

order and specifically stated, "I don't have it because it's been disbursed to my clients and it's been spent. And so basically the money is not there. I don't have $120,000. I just do not have that much money."

61. As a result of respondent's failure to pay the funds specified in the order, on May 30, 2007 Judge Sylvester had respondent incarcerated until such time as the funds were paid.

62. After several days in jail, respondent paid the money to purge himself of the contempt.

63. On June 22, 2007, respondent filed an appeal to the Superior Court from the May 11, 2007 order.

64. On July 3, 2007, Judge Sylvester entered an order requiring respondent to file a concise statement of matters complained of on appeal within 21 days of the date of the order.

65. Respondent filed his Concise Statement on July 24, 2007.

66. On August 10, 2007, respondent filed an appeal to the Superior Court from the January 19, 2007 order.

67. The Superior Court consolidated the appeals on October 4, 2007.

68. On October 12, 2007, Judge Sylvester filed her opinion in the consolidated appeals.

69. On December 7, 2007, Mr. Maniloff filed an application to dismiss the appeals for respondent's failure to file a brief.

70. On December 17, 2007, respondent filed an answer

to the application.

71. On January 8, 2008, the Superior Court entered an order directing respondent to file a designation of contents of reproduced record by January 15, 2008 and to file a brief by January 29, 2008.

72. The appeals were dismissed for respondent's failure to file a brief.

73. At the disciplinary hearing on September 16, 2009, petitioner presented the testimony of Judge Sylvester, Howard Maniloff, Karen Grassie, and Michael Lift.

74. Ms. Grassie credibly testified that:

a. she is an assistant branch manager for PNC Bank located at 16th and Market Streets in Philadelphia;

b. she brought to the hearing PNC records for respondent's trust account for the period of May 2005 through July 2005, pursuant to subpoenas issued by petitioner;

c. she reviewed the subpoenaed records and determined that a deposit and deposit slip for $119,507 were among the records;

d. the deposit slip was dated June 10, 2005;

e. the deposit slip was a special slip that could only be produced by a teller;

f. it could only be deposited through a teller because it was for certified funds; and

g. the deposit was not made using an "express deposit box envelope."

75. Mr. Litt credibly testified that, among other things:

a. he has been employed as an auditor for petitioner since 2001;

b. he reviewed bank records for respondent's IOLTA accounts;

c. he compiled information obtained from the particular bank's statement and prepared a spreadsheet;

d. on June 10, 2005, $119,507 was deposited;

e. the daily balance on respondent's bank statement on June 10, 2005 was $97,074.28, which balance reflects all transactions that were completed by the end of that day;

f. he reviewed all deposits and disbursements made during the period from May 31, 2005 through October 31, 2005 and was able to reconcile the deposits and corresponding disbursements as they related to certain clients;

g. based upon his reconciliation of deposits made on behalf of certain clients, he was able to determine that all other disbursements made from June 9, 2005 through October 31, 2005 were attributed to the June 10, 2005 deposit;

h. based upon his analysis, he could conclude that from June 9, 2005 to October 31, 2005, respondent received a total of $72,150.49 attributed to the June 10, 2005 deposit;

i. based upon his analysis, he could conclude that, with the exception of approximately $2000, all funds attributed to the June 10, 2005 deposit were expended by respondent; and

j. there was never a time that any funds were put into

either respondent's PNC account or TDB account to recompense the June 10, 2005 deposit.

76. The June 10, 2005 account balance contained in Mr. Litt's spreadsheet for respondent's PNC Bank was $97,074.28 and is consistent with the daily ledger balance indicated for respondent's PNC IOLTA account.

77. Judge Sylvester credibly testified, among other things, that:

a. she expected that the order that she issued would have been honored as they are in "normal" cases but since 1986 this was the first time she had a "lawyer that is just like, you now, disregarding everything", (N.T. 147-148)

b. she guessed that "he was trying to stop us from doing [the contempt hearing]. Yes it was a problem because we had to - [her] file [was] at least 2 feet tall. [She means], it was just like one thing after another"; (N.T. 148)

c. "every step of the way, every step of the way, he was trying to stop the court's order. [She] never met anybody like him" (N.T. 148)

d. respondent's behavior caused her and her staff to be in fear.

78. Mr. Maniloff credibly testified, among other things, that:

a. "There were countless motions filed [by respondent] in Superior Court and in the trial court. There were days of hearing." (N.T. 159-160)

b. respondent sent him a letter via facsimile in which Respondent enclosed a copy of an "express deposit

slip" for the Wachovia Funds;

c. respondent was at times deceptive, disrespectful, disruptive and threatening to Mr. Maniloff and Mr. Maniloff's clients;

d. he believes that respondent attempted to "frame" him by posting inappropriate comments in the Philadelphia City Paper regarding a Philadelphia Court of Common Pleas judge;

e. he determined, through the service of subpoenas, that the address from which the comments were posted, was respondent's own Internet Protocol (IP) address; and

f. as the result of the posting he was embarrassed and wrote a letter to Judge Jones to explain that it was not he who posted the comments.

79. Respondent did not deposit the Wachovia Funds using the "express deposit" at PNC.

80. Respondent did deposit the Wachovia Funds through the teller's window.

81. Respondent disbursed the Wachovia Funds to himself or for the benefit of others.

82. Respondent failed to comply with the June 9, 2005 order and the June 10, 2005 order.

83. At the time respondent or his representative received the Wachovia Funds, respondent knew that Mr. Maniloff had filed a motion to stay the proceedings with Superior Court.

84. At the time respondent deposited the Wachovia Funds in PNC on June 10, 2005, he knew that the Superior Court had entered the June 9, 2005 order, staying the

proceedings.

85. Respondent backdated checks 1077, 1080, 1082, and 1084 in order to avoid the clear implications of the June 9, 2005 order.

86. Respondent failed to maintain the Wachovia Funds after he was notified of the June 9, 2005 order and June 10, 2005 order.

87. Respondent failed to return the Wachovia Funds after he was notified of the June 10, 2005 order.

*The Bankruptcy Court Matter*

88. On March 12, 2009, Respondent was a tenant at 2000 Delancey Street, Apartment 3-E, Philadelphia.

89. On February 3, 2009, the Sheriff received a Writt of Possession for the premises.

90. On February 24, 2009, Deputy Sheriff John J. Polsky posted the premises with the Writ of Possession.

91. Deputy Polsky wrote a note on the Writ of Possession that the Writ was the last notice before an eviction and the Sheriff's telephone number was included.

92. Respondent did not call the Sheriff prior to the eviction.

93. The eviction was scheduled for March 13, 2009.

94. It is the Sheriff's procedure that the deputies will go to the property on the day before the scheduled eviction to attempt contact with the tenant.

95. Deputy Polsky posted the eviction date on a door at the premises and also placed the posting in respondent's

mailbox on two occasions.

96. Deputy Polsky went to the premises on the day before the scheduled eviction. The previous postings were no longer on the door or in the mailbox.

97. On March 12, 2009, Lieutenant James Lee received a two page facsimile from respondent which contained respondent's letterhead cover sheet and a copy of a "voluntary petition" from the United States Bankruptcy Court indicating that respondent had filed for bankruptcy and "relief ordered" on March 12, 2009. The order purported to have been signed by Judge Diane W. Sigmund.

98. Upon receipt of the voluntary petition and the stamped "relief ordered", the eviction was stopped.

99. After notifying plaintiff's counsel, Lieutenant Lee contacted the bankruptcy court and determined, among other things, that:

a. respondent had not fi led any matter with the bankruptcy court;

b. Diane Sigmund was no longer a bankruptcy court judge;

c. respondent's last actual bankruptcy fi ling was in 1995;

d. if the bankruptcy had been electronically filed it would not have a date-stamp and time in the lower right-hand corner, and;

e. the bankruptcy was fraudulent.

100. Lieutenant Lee attempted to call respondent at respondent's office but there was no answer.

101. On March 12, 2009, Lieutenant Lee made handwritten notes on the facsimile cover sheet to memorialize his conversations with plaintiff's counsel and the bankruptcy court clerk.

102. Lieutenant Lee received the facsimile with certain individual items or markings on the bankruptcy court order already circled.

103. The Sheriff's solicitor, Ed Chew, researched the docket and confirmed that there was no bankruptcy filing.

104. The eviction was rescheduled for March 16, 2009.

105. On March 16, 2009, Deputy Polsky and the property manager gained entry to the building and upon arriving at respondent's apartment found a note on the door that warned of bodily injury or death and that the residence was "boobie-trapped."

106. Deputy Polsky knocked on the apartment door but did not receive a response.

107. Based on the threatening nature of the contents of the note, Deputy Polsky called the Sheriff's office to obtain police backup.

108. After Deputy Polsky called for backup, respondent answered the door and told him that the note was for burglars, following which respondent left on a bicycle.

109. Marie Needham testified at the disciplinary hearing. She is employed by the bankruptcy court as the operations manager and is familiar with the policies and procedures of the bankruptcy court clerk's office.

110. Ms. Needham testified credibly that respondent

did not file for bankruptcy in 2009, but did file in 1995. At that time, an original and two copies would have been required, which were date-stamped by hand using a date/ time machine.

111. The judge assigned to respondent's 1995 bankruptcy was Diane W. Sigmund.

112. On March 12, 2009, Judge Sigmund was no longer sitting as a bankruptcy judge as she was retiring and was not assigned any cases.

113. Ms. Needham checked to see if any bankruptcy existed under the docket number purportedly used by respondent and determined that the docket number was assigned to a different debtor.

114. The date stamp on the purported petition sent by respondent to the Sheriff's office is not the type of date stamp used by the bankruptcy court.

115. The purported bankruptcy petition is not legitimate, and is a forged and fraudulent document manufactured by respondent.

116. Respondent failed to appear for the disciplinary hearing.

117. Respondent has not accepted responsibility for his actions and has not shown remorse.

### III. CONCLUSIONS OF LAW

By his actions as set forth above, respondent violated the following Rules of Professional Conduct:

1. RPC 1.15(a) - A lawyer shall hold the property of clients or third persons that is in a lawyer's possession separate from the lawyer's own property. Such property

shall be identified and appropriately safeguarded.

2. RPC 1.15(b) - A lawyer shall promptly deliver to the client or third person any property that the client or third person is entitled to receive.

3. RPC 1.15(c) - When a lawyer is in possession of property in which two or more persons, one of whom may be the lawyer, claim an interest, the property shall be kept separate by the lawyer until the dispute is resolved.

4. RPC 3.1 - A lawyer shall not bring or defend a proceeding or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous.

5. RPC 3.3(a)(1) - A lawyer shall not knowingly make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer.

6. RPC 3.3(a)(3) - A lawyer shall not knowingly offer evidence that the lawyer knows to be false.

7. RPC 3.4(b) - A lawyer shall not falsify evidence, counsel or assist a witness to testify falsely, pay, offer to pay, or acquiesce in the payment of compensation to a witness contingent upon the content of the witness' testimony or the outcome of the case; but a lawyer may pay, cause to be paid, guarantee or acquiesce in the payment of: (1) expenses reasonably incurred by a witness in attending or testifying, (2) reasonable compensation to a witness for the witness' loss of time, and (3) a reasonable fee for the professional services of an expert witness.

8. RPC 3.5(d) - A lawyer shall not engage in conduct intended to disrupt a tribunal.

9. RPC 4.1(a) - In the course of representing a client a lawyer shall not knowingly make a false statement of material fact or law to a third person.

10. RPC 4.4(a) - In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay or burden a third person.

11. RPC 8.4(a) - It is professional misconduct for a lawyer to violate or attempt to violate the rules of professional conduct or assist or induce another to do so, or do so through the acts of another.

12. RPC 8.4(b) - It is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects.

13. RPC 8.4(c) - It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

14. RPC 8.4(d) - It is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice.

## IV. DISCUSSION

This matter is before the Disciplinary Board for consideration of two petitions for discipline filed against respondent, which were consolidated for a single disciplinary hearing before the hearing committee. Respondent filed answers to the petitions, but failed to appear at the hearing.

Petitioner has the burden of proving ethical misconduct by a preponderance of evidence that is clear and satisfactory. *Office of Disciplinary Counsel v. Griasby,* 493 Pa.

194, 425 A.2d 730 (1981). The evidence in the Wachovia Funds matter shows that respondent knowingly and willfully disbursed funds collected by him despite a Superior Court order directing him to return the funds in the amount of $119,507 to Wachovia Bank.

On June 9, 2005, the Superior Court entered an order staying the proceedings pending the outcome of an appeal. The evidence demonstrates that respondent had knowledge of the June 9, 2005 order. On June 10, 2005, the Superior Court entered an order directing that " [respondent] is directed to immediately return the disputed funds ($119,507.00) to Wachovia Bank, N.A...." The evidence demonstrates that respondent had knowledge of the June 10, 2005 order. Respondent did not return the funds as directed by the Superior Court nor did he retain them in his IOLTA account pending the outcome of the underlying litigation. In fact, respondent committed misappropriation and conversion by disbursing the Wachovia Funds to himself and others until the Funds were nearly depleted in November 2005.

Ultimately, following a series of procedural hurdles and hearings, many of which respondent failed to attend, respondent was held in civil contempt and spent several days in jail in 2007 before he paid the funds to purge himself of the contempt. The evidence of record demonstrates that during the course of the litigation, respondent engaged in many acts of professional misconduct, including making false statements of fact and law to the tribunal and prejudicing the administration of justice by his disruptive conduct before the courts.

The second matter before the board concerns respondent's actions in regard to an eviction proceeding

against him. Respondent was scheduled to be evicted from his apartment on March 13, 2009. The evidence of record demonstrates that in an attempt to halt the eviction, respondent sent to the Sheriff by facsimile a purported bankruptcy petition and order of the bankruptcy court purportedly signed by Judge Diane Sigmund. As a result of these documents, the eviction process was cancelled on the eve of the eviction. These documents were later determined to be false and fraudulent.

Petitioner has met its burden of proving that respondent violated the rules of professional conduct as charged in the petitions for discipline. The board's responsibility is to recommend appropriate discipline to address such misconduct. In reaching a recommendation, the board may consider aggravating and mitigating factors pertinent to the case.

Herein, a disciplinary hearing was scheduled for September 15, 2009. On September 14, 2009, respondent attempted to postpone the proceedings by claiming to file a petition for review with the Supreme Court of Pennsylvania. In fact, no petition for review was transmitted to the court on September 14, 2009, or anytime during that week. Respondent failed to appear at the disciplinary hearing on September 15, and the Hearing Committee Chair postponed the hearing in an abundance of caution.

The Hearing Chair issued to respondent an order to Show Cause and Notice to appear on September 16, 2009. Without explanation, respondent failed to appear. The hearing proceeded in respondent's absence. Respondent's failure to appear is an aggravating factor in this matter.

His actions are a continuation of the disruptions he has caused to other tribunals before which he has appeared or was scheduled to appear.

Misappropriation and conversion of entrusted funds constitutes serious misconduct and requires a severe sanction. This misconduct, coupled with respondent's dishonest actions in presenting a fraudulent bankruptcy petition and court order, persuades the board that respondent must be disbarred from the practice of law.

There are many prior cases that support a disbarment recommendation. Where an attorney has engaged in conversion, commingling, forgery and misrepresentation, the court has firmly concluded that the magnitude of the derelictions and its impact upon the legal profession and the administration of justice required the imposition of the most severe sanction. *Office of Disciplinary Counsel v. Keller*, 509 Pa. 573, 506 A.2d 872 (Pa. 1986); *Office of Disciplinary Counsel v. Lucarini* 490, Pa. 560, 417 A.2d 186 (Pa. 1983).

## V. RECOMMENDATION

The disciplinary board of the Supreme Court of Pennsylvania unanimously recommends that the respondent, Michael Romeo Luongo, be Disbarred from the practice of law in this Commonwealth.

It is further recommended that the expenses incurred in the investigation and prosecution of this matter are to be paid by the respondent.

## ORDER

PER CURIAM

And now, this August 20, 2010, upon consideration of

278

the report and recommendations of the Disciplinary Board dated June 1, 2010, it is hereby

Ordered that Michael Romeo Luongo is disbarred from the Bar of this Commonwealth and he shall comply with all the provisions of Rule 217, Pa. R.D.E.

It is further ordered that respondent shall pay costs to the disciplinary board pursuant to Rule 208(g), Pa. R.D.E.